Rene PALOMO, Appellant,

v.

The STATE of Texas, Appellee.

No. 13–94–497–CR.

Court of Appeals of Texas,
Corpus Christi.

June 13, 1996.

Adolfo "Al" Alvarez, Keith C. Livesay, McAllen, for appellant.

Rene Guerra, District & County Attorney, Theodore C. Hake, Asst. Criminal District Attorney, Traci A. Sellman, Asst. Criminal District Attorney, Edinburg, for appellee.

Before YAÑEZ, CHAVEZ and RODRIGUEZ, JJ.

**OPINION**

YAÑEZ, Justice.

Appellant, Rene Palomo, appeals his convictions for murder and attempted murder. After finding appellant guilty of both counts, a jury assessed punishment at twenty-five years confinement and a $5,000.00 fine for the murder conviction and fifteen years confinement for the attempted murder conviction. By eight points of error, appellant challenges his convictions. Appellant contends that the evidence is insufficient and that the trial court erred in its evidentiary rulings. We reverse and remand.

On the day of the crimes, appellant borrowed the family car in Hidalgo, Texas, and drove to his school's basketball court with a friend. When the two discovered that the gym was closed, they continued to drive. Thereafter, they picked up four additional passengers. Appellant was driving. One of the passengers entered the car with a gun. There was also evidence that appellant was a member of the Po' Boyz gang.

After all five passengers were in the car, appellant drove to Pharr, Texas. Appellant stopped the car near a residence where Mark Flores and Raul Soliz Jr. were standing. Flores and Soliz were either members of, or merely friendly with, a rival gang, the Tri–City Bombers. Appellant recognized Mark Flores. In his statement to the police, appellant recounted that Flores had told him "chinga tu madre;" there was other evidence that appellant and Flores had previous verbal altercations. Soon after stopping, appellant began to argue with Flores. Appellant initially began to drive away, but stopped the car and backed up. One of the car's occupants, Ramon Carrillo, leaned out of the car and began to shoot in the direction of Flores and Soliz. After firing three shots, Carrillo got back in the car. In the driver's seat, appellant sped away. Appellant dropped off all but one of the car's five passengers, and went to visit female friends who also knew Flores. The shooting incident left Raul Soliz dead.

 By points of error one through three, appellant complains that the evidence is insufficient to uphold his convictions. In determining the merits of an insufficiency claim, we review the evidence in the light most favorable to the verdict to determine if any rational trier of fact could have found each element of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Geesa v. State,* 820 S.W.2d 154, 157 (Tex.Crim.App.1991); *Prophet v. State,* 815 S.W.2d 836, 837 (Tex.App.—Corpus Christi 1991, pet. ref'd). We also apply this standard to cases involving circumstantial evidence. *Earhart v. State,* 823 S.W.2d 607, 616 (Tex.Crim.App.1991); *Carlsen v. State,* 654 S.W.2d 444, 449 (Tex.Crim.App.1983) (opinion on reh'g). We measure the sufficiency of the evidence against the indictment as incorporated into the jury charge. *Jones v. State,* 815 S.W.2d 667, 670–71 (Tex.Crim.App.1991).

 In this case, the jury was asked if appellant intentionally or knowingly caused the death of Raul Soliz and attempted to cause the death of Mark Flores. The jury charge explained that a person commits murder if he intentionally or knowingly causes

the death of an individual. TEX. PENAL CODE ANN. § 19.02(a) (Vernon 1989). The jury was also instructed that the essential elements of attempted murder are: 1) a person, 2) with the specific intent to cause the death of another, 3) does an act amounting to more than mere preparation, 4) but fails to effect the death of the other individual. TEX. PENAL CODE ANN. § 15.01(a) (Vernon Supp. 1994); TEX. PENAL CODE ANN. § 19.02(a)(1) (Vernon 1989); *Fuller v. State,* 716 S.W.2d 721, 723 (Tex.App.—Corpus Christi 1986, pet. ref'd). A specific intent to kill is a necessary element of attempted murder. *Flanagan v. State,* 675 S.W.2d 734, 741 (Tex. Crim.App.1984).

Furthermore, the jury was instructed that

[a] person is criminally responsible for an offense committed by the conduct of another if:

(2) acting with the intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense;

TEX. PENAL CODE ANN. § 7.02(a) (Vernon 1974). Additionally, the charge indicated that "mere presence alone will not constitute one a party to an offense."

By points one and two, appellant contends that there is insufficient evidence to show that he intentionally and knowingly caused the death of Raul Soliz, or that he had the specific intent to murder Mark Flores. Appellant argues that he did not know there was a gun in the car, that he did not know that Ramon Carrillo was going to shoot, that he was merely present at the scene of the offense and never touched the gun. Appellant argues that there is no evidence to show that he intended to assist Ramon Carrillo in the shootings.

 When reviewing the sufficiency of the evidence, an appellate court must examine all the evidence, including any that was erroneously admitted. *Rodriguez v. State,* 819 S.W.2d 871, 873 (Tex.Crim.App.1990). The jury heard evidence that the appellant did not get along with Flores, and that he had exchanged words with him in the days preceding the murder. The jury also heard

testimony regarding a possible gang rivalry between appellant and the persons in his car, and Flores and his friends, including Soliz. There was testimony that someone driving appellant's car had attempted to run over the same individuals the day before the murder. Finally, the jury heard testimony that on the day of the crime, appellant had picked up several of his friends, one of whom brought a gun, and that they eventually drove to Mark Flores' house, in front of which Flores and the victim were standing. Flores testified that appellant shouted out gang slogans and obscenities at him and Soliz. Flores also stated that appellant then began to drive away, but suddenly stopped and backed up, at which point one of his passengers got out and fired three shots from a .22 caliber weapon at him and Soliz. Appellant then drove away.

Given the totality of the evidence presented, we hold that there was sufficient evidence, under the law of parties, to find that appellant had the specific intent to assist in the attempt to shoot Flores, and that appellant intended to assist in the murder of Soliz. With regard to the attempted murder of Flores, the evidence demonstrated an ongoing personal conflict between appellant and Flores, and the identification of appellant's car in a prior attempted hit and run involving the victims. Points one and two are overruled.

■ By point number four, appellant maintains that the trial court erred by not allowing him to call co-defendant Ramon Carrillo as a witness. Related to this point of error is appellant's fifth point of error, that the trial court erred in denying the accused a right to perfect a proper bill of exception on point number four. The record reflects that the trial court did allow appellant to make a bill of exception on this point, and that appellant's counsel chose to offer a concise statement of what he believed the testimony would show, as allowed by Texas Rule of Appellate Procedure 52(b). In his

informal bill of exception, appellant's attorney stated,

If Mr. Carrillo had testified, he would testify essentially ... that my client did not do the shooting, did not assist in the shooting, did not know of the shooting, in no way was a party to the shooting of the victim in this particular case.... If Roman Carrillo were present, he would completely, positively, exculpate Rene Palomo of any criminal doing in the shooting....

We hold that this statement was sufficient to apprise the court of the content of the excluded testimony, and did preserve error. *Love v. State,* 861 S.W.2d 899, 901 (Tex.Crim. App.1993); *See Cavazos v. State,* 904 S.W.2d 744, 748 (Tex.App.—Corpus Christi 1995, pet. ref'd)(error was not preserved when appellant did not show what excluded testimony would have been). We therefore disregard appellant's fifth point of error, and consider the merits of point number four.

Carrillo had been indicted for the same crimes before appellant's trial. He had initially given a voluntary statement to police stating that he was the person who fired the gun, but that he merely shot at a nearby car to scare them, without any intention of hitting them. Subsequent to the statement, Carrillo pleaded guilty to both counts. He had not been sentenced at the time of appellant's trial.

Appellant's counsel subpoenaed Carrillo to testify, based on his belief that Carrillo wanted to testify[1] for the appellant over the objections of his own attorney. Carrillo was sitting outside the courtroom, waiting to be called in to testify. In two separate hearings outside the presence of the jury, appellant's counsel informed the court that Carrillo would testify that neither he nor appellant had any intention of killing anyone, and that appellant did not know he was going to fire a gun. Counsel argued in the alternative that, should Carrillo decide not to testify, or not be allowed to testify, that his initial statement to the police[2] should be admitted under

---

1. Appellant's counsel explained to the court that Carrillo told Palomo in jail "I don't care what my lawyer says. This is my proffer. I don't care what my lawyer says, I want to testify so that I can testify [sic] only to what is in that statement...."

2. The relevant portion of the statement, for purposes of exculpating Palomo, is as follows: "then

a hearsay exception. In either case, appellant's counsel argued that Carrillo's testimony or statement would be probative, and were essential in obtaining jury instruction on the lesser included offenses of voluntary and involuntary manslaughter.

The State argued, both at trial and on appeal, that Carrillo had already pled guilty to both the murder and the attempted murder, and therefore he should not be allowed to testify because any testimony to the contrary would subject him to prosecution for perjury. Specifically, the State argued that, should he testify under oath that he did not intend to shoot anyone, and that it was all an accident, or if his prior statement was admitted, it would directly contradict his guilty plea. Moreover, the State argued that Carrillo had not yet been sentenced and his Fifth Amendment privilege against incriminating himself was still in force. The argument followed that Carrillo would likely invoke his privilege, thereby obviating the right of the appellant to call him as a witness.

The court refused to allow Carrillo's testimony, without questioning him outside the presence of the jury. It did not, either by request of the State, or on its own initiative, direct appellant to make his offer of proof in question and answer form, as allowed by Texas Rule of Appellate Procedure 52(b). The court also refused to admit Carrillo's original statement to the police that it was an accident.

 It is an undisputed rule of law that a defendant has a right to call a co-defendant as a witness. *Washington v. Texas,* 388 U.S. 14, 23, 87 S.Ct. 1920, 1925, 18 L.Ed.2d 1019 (1967); *Cunningham v. State,* 500 S.W.2d 820, 823 (Tex.Crim.App.1973); *Overton v. State,* 419 S.W.2d 371, 372 (Tex. Crim.App.1967). This right is not absolute, however. If a potential defense witness has a Fifth Amendment privilege against incriminating himself, that privilege overrides a defendant's right to compel testimony. *Bridge v. State,* 726 S.W.2d 558, 567 (Tex.Crim.App. 1986); *Rodriguez v. State,* 513 S.W.2d 594, 596 (Tex.Crim.App.1974). Moreover, a de-

fendant has no right to have a witness merely assert his privilege against self-incrimination in the presence of the jury. *Bridge,* 726 S.W.2d at 567; *Ellis v. State,* 683 S.W.2d 379, 382 (Tex.Crim.App.1984). When a co-defendant has pled guilty and has been sentenced in connection with the offense, he may still properly invoke his Fifth Amendment privilege against self-incrimination, because if his testimony contradicts any previous judicial admissions, he could be subject to the charge of perjury. *Delrio v. State,* 866 S.W.2d 304, 306 (Tex.App.—Houston [14th Dist.] 1993, pet. ref'd).

 The critical inquiry for the trial court to make before it excludes testimony is whether a potential defense witness who may have a privilege against testifying intends to invoke that privilege, or intends to waive that privilege if called to the stand. The intentions of a potential witness, if not already apparent, can be determined by questioning that potential witness at a hearing outside the presence of the jury. *See Bridge,* 726 S.W.2d at 567. Once the potential witness indicates that he will invoke his constitutional privilege, the court need not call him to the stand before the jury. *Id.*

The right of a defendant to call a co-defendant to testify was enunciated in *Washington v. Texas,* where the Supreme Court addressed the constitutionality of a Texas procedural statute which provided that persons charged as principals, accomplices or parties in the same crime could not be introduced as witnesses for one another. *Washington,* 388 U.S. at 15, 87 S.Ct. at 1921. The Court explained that such rules prohibiting co-defendants from testifying were based on the rationale that, if they were allowed to testify, each co-defendant simply would "try to swear the other out of the charge." *Id.* at 21, 87 S.Ct. at 1924. The unstated premise, therefore, was that "the right to present witnesses was subordinate to the court's interest in preventing perjury, and that erroneous decisions were best avoided by preventing the jury from hearing any testimony

---

we were leaving and then I pointed the gun at the station wagon and then I fired three shots. I never pointed the gun at any of them. I was just

trying to scare them by hitting the back window of the station wagon."

that might be perjured." *Id.* We note that this is essentially the argument that the State offers to support denying Carrillo the opportunity to testify.

In striking the Texas law, the Court stated,

> The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. . . . This right is a fundamental element of due process.

*Id.* at 19, 87 S.Ct. at 1923. In that case, the Court reversed a conviction where the State denied a defendant the right to subpoena a witness who was physically and mentally ready to testify about events he personally observed, holding that such evidence would have been both relevant and material to the defense. *Id.* at 23, 87 S.Ct. at 1925.

In the present case, the State objected to Carrillo's testimony on two grounds: 1) he should not testify because he would simply invoke his Fifth Amendment privilege, and 2) he should not be allowed to testify because he would simply perjure himself. Neither of these grounds should have precluded the trial court from questioning Carrillo of his intentions. The State never contested the relevancy of Carrillo's testimony.

■ We agree with the State's argument that Carrillo could have invoked his Fifth Amendment privilege because his conviction was not final, and his testimony at trial might have subjected him to perjury if it differed from his guilty plea. *Delrio,* 866 S.W.2d at 306. We also agree with the State that, had Carrillo chosen to invoke his constitutional privilege against self-incrimination, appellant could not have compelled his testimony, despite what appellant argued. *Bridge,* 726 S.W.2d at 567. Moreover, appellant would not have a right to have Carrillo assert his privilege in the presence of the jury. *Id.*; *Ellis v. State,* 683 S.W.2d 379, 382 (Tex.Crim.

App.1984). But we disagree with the State's second argument that the court was correct in not allowing a co-defendant who would likely perjure himself to testify. This is basically the same argument that was refuted by the Supreme Court in *Washington.* If Carrillo were to take the stand and contradict his guilty plea, the state could have impeached him in front of the jury, and set the foundation for charges of perjury.

We hold that the trial court erred because it did not allow Carrillo the opportunity to testify. Carrillo was outside the courtroom and could easily have been questioned, outside the presence of the jury, of his intentions.[3] Carrillo could have chosen to waive the privilege and testify. *Brumfield v. State,* 445 S.W.2d 732, 735 (Tex.Crim.App.1969). Had he done so, it would be error to exclude his testimony, as it would clearly have been relevant to appellant's defense if it resembled his counsel's characterizations. *McClure v. State,* 575 S.W.2d 564, 567 (Tex.Crim.App. [Panel Op.] 1979). It is possible that he could have provided testimony that, while exonerating Palomo, would not subject himself to charges of perjury. Yet the trial court simply ruled that Carrillo would not be allowed to testify based on the statements of counsel. In so doing, the trial court abused its discretion because it arbitrarily restricted appellant's constitutional right to present his own witness to establish a defense. *Washington,* 388 U.S. at 23, 87 S.Ct. at 1925.

■ Having decided that the trial court erred in not eliciting from Carrillo whether he intended to testify or not, we must now decide if that error is reversible. An appellate court must reverse the judgment below unless it determines beyond a reasonable doubt that the error made no contribution to the conviction or the punishment. TEX. R.APP. P. 81(b)(2); *Vann v. State,* 853 S.W.2d 243, 253 (Tex.App.—Corpus Christi 1993, pet. ref'd). In determining harmless error, the reviewing court should not focus on the propriety of the outcome of the case, but

---

**3.** We note that Texas Rule of Appellate Procedure 52(b) provides that "the court *may,* or at the request of a party *shall,* direct the making of the offer in question and answer form." (emphasis added). Thus, had the State doubted Carrillo's willingness to testify, it could have compelled the court to direct appellant's offer of proof in question and answer form, and thereby determined whether Carrillo merely intended to invoke his privilege before the jury.

rather it should be concerned with the integrity of the process leading to conviction. *Higginbotham v. State,* 807 S.W.2d 732, 734–35 (Tex.Crim.App.1991).

■ Appellant was convicted as a party to the crimes. At trial, he attempted to call as his witness the individual who admitted to firing the deadly weapon which killed Soliz. The defense did not present any other direct testimony. Appellant's counsel represented that Carrillo would testify that neither he nor appellant had any intention of killing anyone, and that appellant did not know he was going to fire a gun. Such testimony would have shown that appellant lacked the requisite intent to kill. While Carrillo's credibility could certainly be cast into doubt by the State on cross-examination by pointing out that he had already pleaded guilty to the crimes, refuting earlier statements to the contrary[4], the judge prevented the jury from weighing his testimony in its deliberations. Because we cannot say beyond a reasonable doubt that Carrillo's testimony would not have influenced the jurors' process of deciding the case, we must find that the error in excluding his testimony was not harmless. We sustain appellant's fourth point of error.

Although we have addressed the dispositive point in this case, we will also address, for instructive purposes, the appellant's points relating to some of the State's evidence which he claims was erroneously introduced. Appellant contends that the court should not have allowed the introduction of evidence of a prior hit and run attempt involving a car similar to appellant's car, nor should it have allowed evidence of his tattoo or his participation in Po' Boyz gang initiation rituals.

In his sixth point, appellant alleges that the trial court erred in admitting testimony by Flores that a car similar to the one driven by the appellant attempted to run over the victims and their friend on the day before the crime. In order to preserve error regarding evidence that is wrongfully admitted, the complaining party must timely object to the evidence at trial. TEX.R.APP. P. 52(a). Appellant objected to this evidence at trial, contending that this incident fell within the Texas Rule of Evidence 404(b) prohibition of admitting evidence of "other crimes, wrongs, or acts" to prove the bad character of the appellant. Appellant did timely object to the introduction of this evidence, and stated the substance of his objections in accordance with Texas Rule of Appellate Procedure 52(b), and therefore preserved error.

■ While it is true that evidence of prior acts and crimes of a defendant are not admissible during the guilt or innocence phase of the trial solely to prove bad character or action in conformity with bad character, the proponent of such evidence may satisfy the trial court that it is relevant to some other issue in the trial. *Montgomery v. State,* 810 S.W.2d 372, 376 (Tex.Crim.App. 1990). If the court determines that evidence of prior acts or wrongs is relevant to some issue other than character, it should admit the evidence. *Id.* Among the reasons such evidence might be admissible include its relevancy in proving motive, intent, plan, or absence of mistake or accident. *Id.* Theoretically, such evidence might still be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, but a trial court need not engage in this balancing unless the objecting party enters a proper objection under Texas Rule of Criminal Evidence 403. *McFarland v. State,* 845 S.W.2d 824, 837 (Tex.Crim.App.1992).

■ In response to appellant's relevancy objection, the State argued that, because appellant was being prosecuted for murder, Texas Penal Code § 19.06 permitted it "to offer testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused, and the deceased together with

---

4. Carrillo's statement may not have been completely exculpatory, if admitted. The statement contained, among other things, the following excerpts: "we drove up to a house Rene [appellant] said belonged to Mark. When we got there, Rene started looking for a fight with Mark," "Rene asked Mark if he wanted to get in a one on one

with him," and "Rene was the first one to get out of the car and then we all got out. Then we got in the car and that is when Mark started throwing the finger at us ... then somebody in the car, I don't see who, said to me to take the gun, here...."

all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense." The evidence of the prior incident involved Flores's testimony that he saw appellant's car try to run over him and his friends, including Soliz.

█ We would find that the trial court was correct in admitting that evidence, as it was probative as to the circumstances surrounding the killing, the previous relationship of the parties, and the appellant's state of mind on the day of the charged offenses. Because appellant did not state a Rule 403 objection after the judge overruled his Rule 404(b) objection, he did not preserve error on its prejudicial effect for appellate review. TEX.R.APP. P. 52(a).

In his seventh and eighth points of error, appellant complains that the trial court should not have allowed evidence about his teardrop tattoo, or testimony regarding gang initiation rights. Appellant contends that he was essentially tried for allegedly being a gang member and being present at the scene of the crime, rather than for any misconduct on his part. Appellant's counsel repeatedly asserted that the crime was not gang-related because neither the person who fired the gun (Carrillo) nor the victim (Flores) were members of any gang.

█ Relevant evidence is any evidence having the tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. TEX.R.CRIM. EVID. 401. The fact itself does not have to be in dispute. Rather, the fact must only have something to do with the ultimate determination of guilt or innocence. *Mayes v. State,* 816 S.W.2d 79, 84 (Tex.Crim.App.1991).

█ Appellant has a teardrop tattoo, which apparently had been visible to the jury during voir dire. Appellant had filed a motion in limine to have any evidence regarding the tattoo not mentioned in front of the jury on the grounds that it was not relevant under Texas Rule of Criminal Evidence 402, and that its prejudice substantially outweighed its probative value under Rule 403. The motion was denied.

Appellant's attorney reiterated his objections at trial before the State questioned witness Iris Chapa about what the tattoo meant in the gang. The state mentioned that the only reason for offering the teardrop tattoo was to show that appellant was a member of a gang, and that he knew what was going on that day when the carload of six persons drove to Pharr. The State said that Chapa was a member of the gang for which the tattoo had a particular meaning, that she knew the ways of the gang, and knew of the relationship between the appellant and the parties. The State also argued that it would not ask Ms. Chapa whether appellant had this tattoo, but simply what such a tattoo meant, and that it would tie in the relevance with a later witness (Rodriguez). After overruling appellant's objections, Chapa testified that, in the Po' Boyz gang, a teardrop tattoo symbolizes either that one has murdered someone, or that one has served time in jail. Later, State's witness Officer Rodriguez testified that appellant had one such tattoo.

█ In this case, the tattoo did tend to suggest that appellant was a member of a gang, or at least that he associated with gang members, because it had a special meaning amongst Po' Boyz gang-members. However, appellant's membership in the gang was not a contested or material issue. The issue was his intent and knowledge at the time of the shooting. The teardrop tattoo is not relevant to that issue. We cannot perceive how the fact that he got a tattoo after being in jail provides any nudge towards proving a material issue in the case. Even if it could be construed as relevant towards some type of admission that he participated in the crime, such evidence should be excluded under Texas Rule of Criminal Evidence Rule 403 because of its potential to mislead the jury and unfairly prejudice the appellant.

█ In his eighth point of error, appellant contends the court erred by allowing testimony regarding the Po' Boyz and Po' Girls gang initiation rights. Appellant objected at trial that the rituals were not relevant, but did not state any objection that it was an impermissible use of character evi-

dence, or that, if admitted its prejudicial effect would substantially outweigh its probative value. The State argued that it was necessary testimony to establish Ms. Chapa's knowledge as to the ways of appellant's gang, the Po' Boyz.

Chapa, who is a member of the Po' Girls gang, which is affiliated with the Po' Boyz gang in Las Milpas, testified about the different ways in which gang members are initiated. She said that initiation required one to either get beat up by other gang-members, or to have sex with several of them. She also stated that appellant was a member of the Po' Boyz gang, and that he had participated in her initiation by hitting her in the face and stomach.

We do not find that the trial court erred in ruling that this testimony was relevant. Given the appellant's association with the gang, and the gang-related nature of the crime, we find that the testimony regarding gang initiation rituals did provide at least a small nudge toward proving a fact of consequence (i.e. that this murder was committed by a group of individuals acting together). *See Montgomery,* 810 S.W.2d at 376. If in fact Chapa was a member of the same gang as appellant and Carrillo, and could testify as to the initiation rituals that she experienced at the hand of appellant and others, and the feelings of animosity between appellant and the victims, it would be probative towards proving the State's theory that this crime was perpetrated by members of the Po' Boyz gang acting together with the appellant. However, the offered evidence might be construed as unfairly prejudicial and/or cumulative (for purposes of establishing his gang affiliation), and therefore inadmissible under Rule 403. We note also that, although relevant, it could constitute an impermissible use of character if it was offered merely to suggest that appellant is associated with gang members who participate in certain violent rituals, and therefore by his association with gang members, he showed a propensity for violence and that this character trait made it more probable that he would commit murder. TEX.R.CRIM. EVID. 404(a); *Perez v. State,* 830 S.W.2d 684, 688 (Tex.App.—Corpus Christi 1992, no pet.). But the failure of the appellant to raise this issue to the court in a timely manner precludes consideration of this issue on appeal. *Id.;* TEX.R.APP. PRO. 52(a). Having determined that the trial court committed reversible error in excluding the testimony of a key defense witness, we REVERSE the judgment of the trial court and REMAND the cause to the trial court for a new trial consistent with this holding.