Anthony Shawn MEDINA, Appellant,

v.

The STATE of TEXAS, Appellee.

No. 72594.

Court of Criminal Appeals of Texas,
En Banc.

Oct. 6, 1999.

Concurring Opinion of Judge
Womack June 2, 1999.

Stanley G. Schneider, Houston, for appellant.

Keli Pool Roper, Asst. Dist. Atty., Houston, Matthew Paul, State's Atty., Austin, for State.

## OPINION

KELLER, J. delivered the opinion of the Court in which McCORMICK, P.J. and MANSFIELD, PRICE, HOLLAND, JOHNSON, and KEASLER, JJ., joined.

The Court's prior opinion is withdrawn.

Appellant was convicted in August 1996 of a capital murder committed on January 1, 1996. TEX. PENAL CODE § 19.03. The verdicts required the trial court to sentence appellant to death. TEX. CODE CRIM. PROC. art. 37.071 § 2. Appeal from the sentence of death is direct and automatic to this Court. *Id;* TEX. CONST. Art. I, § 5. Appellant raises twenty-two points of error. We will affirm.

## I. SUFFICIENCY OF THE EVIDENCE

### A. Legal Sufficiency

██ In points of error one and two, appellant challenges the legal sufficiency of the evidence to establish an intent to kill. Citing *Morrow v. State,* 753 S.W.2d 372 (Tex.Crim.App.1988), appellant argues the evidence is insufficient because it fails to establish that he specifically intended that death result from his conduct.

Reviewed in the light most favorable to the verdict, *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), *Nelson v. State,* 848 S.W.2d 126, 131 (Tex. Crim.App.1992), the evidence in appellant's case establishes that shortly after midnight on January 1, 1996, appellant drove past the Rodriguez residence and opened fire into a crowd of children and teenagers standing in the well-lit front yard of the home. The young people, mostly family, were attending a New Year's Eve celebration. Appellant sprayed gunfire across the front yard and into the group of people at about five to seven feet from the ground and from only a few feet away from some of the victims. Appellant's gunfire struck several cars, the home, and three people. Rocio Pedrosa was shot in the abdomen. She survived. The capital murder victims—David Rodriguez, 8, and his sister Diane Rodriguez, 13—were nearest to appellant's gunfire. David sustained two fatal wounds; one pierced his head while the other pierced his arm and traveled into his chest. Diane sustained a non-fatal wound which pierced her right breast and a fatal wound which pierced her left shoulder and traveled into her neck. The murder weapon was a Russian SKS assault rifle with eight and one quarter pounds trigger pull.

Johnny Valadez, who was in the car with appellant, testified that appellant affirmed that he had shot "her" because "he saw fat meat fly off." [1]

The theory of capital murder under which appellant was indicted and convicted, TEX. PENAL CODE § 19.03(a)(7)(A) includes within its ambit both intentional and *knowing* murders. § 19.03(a)(7)(A) provides in relevant part that a person commits an offense if he "murders more than one person ... during the same criminal transaction" (ellipsis inserted). Section 19.03(a) defines capital murder with reference to Section 19.02(b) which states, in pertinent part, that a person commits an offense if he:

(1) intentionally or **knowingly** causes the death of an individual;

(emphasis added). [2] Section 6.03(b), TEX. PENAL CODE, in pertinent part, states, "A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result." Thus, the evidence is sufficient in this case if it supports the rational conclusion that appellant committed the murders intentionally or knowingly. The facts of this case, while supporting both an intentional and knowing theory of murder, more accurately present two murders committed knowingly. We hold that the evidence is sufficient to support a rational conclusion that appellant committed the murders knowingly, that is, that appellant was aware that his conduct was reasonably certain to result in death.

Nevertheless, the evidence is also sufficient to show that the murders were committed intentionally. In response to the

---

**1.** There was evidence that these murders were committed in revenge for the murder of Hector Garcia, a fellow gang member of appellant's and his close friend. It was established that the Rodriguez home was targeted by La Raza 13, appellant's gang, because Veronica Rodriguez, the victims' cousin, was the girlfriend of Marco Martinez, of the H-town Crips. Appellant apparently held Martinez responsible for Garcia's murder.

**2.** *See and compare* capital murder under TEX. PENAL CODE § 19.03(a)(2)(1986). The phrase "intentionally commits the murder" in § 19.03(a)(2) makes "intentional" the culpable mental state necessary for conviction of capital murder under 19.03(a)(2), and excludes the possibility of a "knowing" capital murder under 19.03(a)(2). *Demouchette v. State,* 731 S.W.2d 75, 80 (Tex.Crim.App. 1986).

argument that the evidence is insufficient to establish an intent to kill, the State argues that *Vuong v. State*, 830 S.W.2d 929, 933 (Tex.Crim.App.1992), is directly on point against appellant. We agree with the State; *Vuong* is controlling.

Vuong was convicted of capital murder after he entered a crowded restaurant and opened fire at the patrons. Vuong argued the evidence was insufficient to establish that he acted with the specific intent to kill because the evidence showed that he had acted irrationally and without thinking. As appellant does today, Vuong argued that firing a gun into a crowd of people could not be capital murder because the act lacks a specific intent to kill. We rejected Vuong's arguments, holding that

> Appellant's use of a deadly weapon in a tavern filled with patrons supplies ample evidence for a rational jury to conclude beyond a reasonable doubt that Appellant had the requisite intent to kill: "The specific intent to kill may be inferred from the use of a deadly weapon, unless in the manner of its use it is reasonably apparent that death or serious bodily injury could not result." *Godsey v. State*, 719 S.W.2d 578, 580–81 (Tex.Crim.App.1986). *Clearly, the use of an automatic weapon under these circumstances was a "manner of use" in which death or serious bodily harm was a likely result.* In addition, there are a number of other factors that could have led a jury to reasonably believe Appellant's conduct was knowing or intentional, including: (1) the testimony of witnesses concerning appellant's calculated demeanor, (2) evidence showing that seven of the approximately eleven shots fired during the criminal episode struck human targets, and (3) the fact that the victim Tien was shot twice directly in the face and the victim Hien was killed by a bullet that hit him squarely in the chin. Finally, we note that it is not required that the State show a motive in order to sustain a conviction of capital murder. *Garcia v. State*, 495 S.W.2d 257, 259 (Tex.Crim.App.1973).

*Vuong*, 830 S.W.2d at 934 (emphasis added).

As in *Vuong*, the circumstances surrounding the present offense support a rational finding that appellant acted with the specific intent to kill. Clearly, the use of an automatic weapon under these circumstances was a "manner of use" in which death or serious bodily harm was a likely result. Opening fire with an automatic rifle, at close range, on a group of people supports the conclusion that appellant acted with the specific intent to kill. Points of error one and two are overruled.

### B. Factual Sufficiency

▮ In points of error three and four, appellant challenges the factual sufficiency of the evidence to establish an intent to kill. *Clewis v. State*, 922 S.W.2d 126, 131–132 (Tex.Crim.App.1996). Factual sufficiency reviews take into consideration *all* of the evidence related to the challenge, and weigh the evidence which tends to prove the existence of the fact in dispute against the contradictory evidence. *Clewis*, 922 S.W.2d at 129, 134. But, to avoid intruding upon the jury's role as arbiter of the weight and credibility of the evidence, a factual sufficiency review remains deferential to the jury's verdict. *Clewis*, 922 S.W.2d at 133. That a different verdict would be more reasonable is, therefore, insufficient to justify reversal; the jury's verdict will be upheld, unless it is so "against the great weight of the evidence" that it is "clearly wrong and unjust," i.e., manifestly unjust, shocking to the conscience or clearly biased. *Id.* at 135.

▮ Appellant argues that the evidence is factually insufficient because the great weight and preponderance of the evidence establishes that he intended only to shoot at the house and not at any individual. Our holding in appellant's first point of error defeats this assertion. *See* points one and two, *supra*. To the contrary, we find no evidence that appellant intended only to shoot at the house. Appellant knew the home to be occupied. The vic-

tims were standing in plain sight, in front of the house. Most of the bullets were shot at human height. And, appellant employed an especially deadly weapon, which he fired at close range. The jury's verdict was not against the great weight of the evidence, clearly wrong and unjust, or biased. Points of error three and four are overruled.

## II. GUILT PHASE

### A. Jury instructions

#### 1. *Transferred Intent*

■ In points of error five and six, appellant claims that the trial court erred in instructing the jury on transferred intent. Acknowledging that he made no objection at trial, he argues, under *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App. 1985)(op. on reh'g), that the error was egregious. But if appellant is correct that a finding of guilt upon a transferred intent theory would be irrational under the evidence, then it would appear highly unlikely that a correctly framed transferred intent instruction would result in a jury verdict on that theory.[3] Under similar circumstances involving the law of parties, we have held that the defendant failed to show egregious harm. *Cathey v. State*, 992 S.W.2d 460, 466 (Tex.Crim.App.1999)(no egregious harm from correctly framed parties instruction if evidence fails to support submission of law of parties). The reasoning in *Cathey* is equally applicable to the present case. Points of error five and six are overruled.

#### 2. *Lesser Included Offenses*

■ In points of error seven through nine, appellant contends that the trial

court erred in denying his requested instructions on the lesser included offenses of felony murder, murder and involuntary manslaughter. Appellant argues that he was entitled to the lesser offense instructions because there is evidence in the record that if he killed the victims, he did so only without the intent to kill.[4] The State counters that there is no such evidence in the record.

Under *Rousseau v. State*, 855 S.W.2d 666, 672–75 (Tex.Crim.App.1993), a two-prong test must be met before a lesser-included-offense instruction must be given: the lesser-included-offense must be included within the proof necessary to establish the offense charged, and, some evidence must exist in the record that if the defendant is guilty, he is guilty only of the lesser offense. Appellant cannot meet the second prong of this test.

Appellant argues that because the murders were committed in a "random" drive-by-shooting there was evidence that he if he killed the victims, it was without the specific intent to kill and that he was entitled to the lesser-included offense instructions. We disagree.

As discussed earlier, the capital murder provision at issue in the present case is satisfied if the evidence shows two murders, whether the killings are intentional or knowing. Appellant would be entitled to the lesser offense of murder (§ 19.02(b)(1) or (2)) only if he showed that he possessed one of the above three culpable mental states as to *one* of the victims, but not as to the other victim.[5] No evidence was produced during trial to suggest that appellant intended only one victim or

3. We assume for the sake of argument that the evidence does not raise the issue of transferred intent. We express no opinion on that issue.

4. We assume that appellant refers to murder under § 19.02(b)(2), felony murder under § 19.02(b)(3) and manslaughter under § 19.04. These are all forms of criminal homicide committed without the specific intent to kill.

5. If the law of transferred intent applies to the case, appellant would have to produce evidence that he possessed one of the relevant culpable mental states as to only one person, and not as to any other person present that night. As noted above, we do not address whether the law of transferred intent applies to the present case.

knew with a reasonable certainty that only one person would die.

Appellant would be entitled to the lesser offenses of felony murder and manslaughter only if he showed that his culpable mental state did not rise to the level of an intentional or knowing killing—such as recklessness. But there is no evidence in the record that appellant was anything less than reasonably certain that multiple people would be killed. Evidence that appellant did not care who he killed does not reduce his culpable mental state from knowing to mere recklessness.

After reviewing the record, we conclude that there was no evidence that if appellant committed homicide he did so without a culpable mental state qualifying him for capital murder. *See* points one and two, *supra.* Appellant was not, therefore, entitled to the instructions as he alleges. Points of error seven through nine are overruled.

### 3. *Knowingly*

■ In point of error ten, appellant contends that the trial court erred in overruling his objection to the trial court's instruction to the jury that he could be found guilty of capital murder if the jury found that he knowingly engaged in the conduct leading to the victims' deaths. The State agrees that the trial court's definition of "knowingly" was incorrect because it defined "knowingly" as to the nature of conduct, but the State argues that, because appellant did not object on the same grounds upon which he now complains, the error must be shown to have been egregious.

At trial appellant objected to the inclusion of a definition of "knowingly" in the jury charge. He argued that capital murder under 19.03(a)(7)(A) could only be committed intentionally and not knowingly. As the State correctly argues, appellant did not object that the particular definition included was incorrect. As appellant's objection at trial does not comport with his objection on appeal, his present objection was not preserved. TEX. R. APP. PROC.

33.1. As he alleges this particular jury charge error for the first time on appeal, appellant must establish that egregious harm arose from the alleged error, that is, that he was denied a fair trial. *Alvarado v. State,* 912 S.W.2d 199, 216 (Tex.Crim. App.1995).

■ Because it sheds light on our further resolution of this issue, we answer first whether capital murder under Section 19.03(a)(7)(A) might be committed knowingly. For the reasons already given in points one and two, *supra,* capital murder under § 19.03(a)(7)(A) includes "knowing" killings. The trial court correctly determined and instructed the jury that capital murder under Section 19.03(a)(7)(A) can be committed intentionally or knowingly. *Compare* TEX. PENAL CODE § 19.03(a)(2).

■ Capital murder is a result-of-conduct offense; a jury charge which defines "intentionally" as it relates to the nature of conduct as well as the result of conduct is, therefore, incorrect. *See Cook v. State,* 884 S.W.2d 485, 491 (Tex.Crim. App.1994). Appellant points out that the trial court defined "knowingly" with reference to nature of conduct and not as to result of conduct. The instructions stated,

A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist.

According to appellant, this error caused egregious harm because it lessened the State's burden of proof, authorizing his conviction if the jury found that he knowingly engaged in the conduct instead of finding that he engaged in conduct which he knew with reasonable certainty would result in death. The State concedes that it was error for the trial court to define knowingly as to the nature of his conduct and not the result of appellant's conduct. We agree that it is error to define a knowing murder as to the nature of conduct alone. The most accurate definition of

knowingly would have referred to the result of conduct. Tex. Penal Code § 6.03(b). But for the following reasons we cannot agree the error was so egregious and created such harm that appellant has not had a fair and impartial trial.

■ First, the trial court correctly instructed the jury regarding intentional murder, and the evidence was sufficient to support a conviction under that theory of the offense. There was, therefore, at least one theory of the offense upon which appellant's conviction may stand. See points of error one and two. See also Atkinson v. State, 923 S.W.2d 21, 27 (Tex.Crim.App. 1996) (the harmfulness of error in a jury charge should be measured against the likelihood that the jury's verdict was actually based upon an alternative available theory of culpability not affected by erroneous portions of the charge). Second, the application paragraph repeatedly and consistently instructed the jury that they must believe beyond a reasonable doubt that appellant "intentionally or knowingly caused the death" before they could find him guilty. Where the application paragraph correctly instructs the jury, an error in the abstract instruction is not egregious. See Plata v. State, 926 S.W.2d 300, 302–3 (Tex.Crim.App.1996)(The inclusion of a merely superfluous abstraction never produces reversible error in the court's charge because it has no effect on the jury's ability fairly and accurately to implement the commands of the application paragraph or paragraphs).

■ Finally, for knowing murders, the distinction between result of conduct and nature of conduct blurs because awareness of the result of the conduct necessarily entails awareness of the nature of the conduct as well. Murder is committed knowingly when the actor engages in conduct while aware that death is reasonably certain to result from his conduct. Tex. Penal Code § § 6.03(b) and 19.02(b)(1). To be aware that his conduct is reasonably

certain to result in death, the actor must also be aware of the lethal nature of his conduct:

> Murder under Section 19.02(a)(1), supra, by knowingly causing death, contemplates both the commission of an act clearly dangerous to human life and an awareness of the nature of that act. Applying the definition of "knowingly," a person knowingly causes death "when he is aware that his conduct is reasonably certain to cause the result." Section 6.03(b), supra. In a prosecution under Section 19.02(a)(1), it surely cannot be inferred that the individual was reasonably certain his conduct would result in death unless his conduct in causing death was clearly dangerous to human life. Thus, with respect to a murder under Section 19.02(a)(1), supra, the act, by necessity, must be objectively clearly dangerous to human life and the individual, by definition, must subjectively be aware that the act resulting in the death was clearly dangerous to human life.

Lugo–Lugo v. State, 650 S.W.2d 72, 81 (Tex.Crim.App.1983). Appellant's case is illustrative; appellant is guilty of murder because he was aware that firing an automatic weapon into a crowd of people was, by the nature of the conduct, reasonably certain to result in death.[6] In short, a knowing murder under 19.02(b)(1) is a result-of-conduct offense which by definition is also a nature-of-conduct offense. In light of the foregoing discussion, we cannot conclude that appellant suffered egregious harm. Point of error ten is overruled.

### 4. Accomplice-witness Instructions

In points of error eleven through thirteen, appellant contends that the trial court erred in refusing to give accomplice-witness instructions regarding the testimony of Dominic Holmes, Johnny Valadez, and Regina Juarez, respectively. At trial appellant's requested instruction was de-

---

**6.** This is what is meant when courts hold that intent to kill can be inferred from the manner in which a deadly weapon is employed. See

e.g., Vuong v. State, 830 S.W.2d 929, 933 (Tex.Crim.App.1992).

nied as to Holmes, but he raised no objection and did not request an accomplice instruction as to Valadez and Juarez. The State responds that, as none of the witnesses could have been convicted of capital murder, the trial court did not err in failing to give the accomplice-witness instruction.[7]

A person is an accomplice if he participates before, during, or after the commission of the crime and can be prosecuted for the same offense as the defendant or for a lesser-included offense. *Blake v. State*, 971 S.W.2d 451, 454–455 (Tex.Crim.App.1998). Mere presence during the commission of the crime does not make one an accomplice, nor is one an accomplice for "knowing about a crime and failing to disclose it, or even concealing it." *Id.* at 454. And we have held that, even where the evidence shows that the witness was present during the commission of the crime *and* participated in concealing that crime, such evidence was not sufficient to raise the issue of accomplice status. *Smith v. State*, 721 S.W.2d 844, 851 (Tex. Crim.App.1986). The defendant is entitled to an accomplice-witness instruction if and only if "there is sufficient evidence in the record to support a charge against the witness alleged to be an accomplice." *Id.* at 455 (internal quotation marks omitted).

Appellant argues that Holmes was an accomplice witness, or that an issue was raised as to his status as an accomplice, because the evidence established that Holmes was appellant's fellow gang member, was with appellant during the offense, and helped conceal the murder weapon. Appellant asserts that Regina Juarez was an accomplice, or at least a factual issue was raised as to whether she was, because the evidence established that she was a gang member and, though not present at the commission of the offense, she concealed the murder weapons. Appellant asserts that Johnny Valadez was an accomplice because he was a gang member, was with appellant on the night of the offense, and "observed" the offense. The State responds that this evidence does not raise the question of liability as an accomplice for purposes of a corroborating instruction.

There is no direct evidence in the record that any of these witnesses knew of appellant's plans to commit the offense. Nor is there any evidence of an overt act committed before or during the shootings by any of these witnesses that would indicate that they were intending to assist the commission of the offense. All of the witnesses in the car with appellant testified, consistently and without contradiction, that appellant did not announce his plans to them and that the offense came as a complete surprise to them. Holmes and Valadez testified that, when they heard the gunfire, they initially thought they were targets of the shooting.

The question is whether gang membership, combined with presence at and/or concealment of a crime often associated with gang activity, is sufficient evidence to support a finding of accomplice status. Our research has revealed no cases from this Court in which this question has been addressed, whether in the context of the accomplice-witness rule or of the law of parties. Several Courts of Appeals' cases have found gang affiliation, combined with other factors, to be sufficient, but those other factors have included more than mere presence at and concealment of an allegedly gang-related offense. *Cunningham v. State*, 982 S.W.2d 513 (Tex.App.—San Antonio 1998) (membership in gang, offense directed at rival gang, flight, armed with a weapon at the time of flight, pointing the gun while others were shooting at the members of the rival gang); *Palomo v. State*, 925 S.W.2d 329, 332–333 (Tex.App.—Corpus Christi 1996)(murder and attempted murder case,

---

7. Article 38.14 (Testimony of accomplice) states:

A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense.

membership in gang, evidence showed that defendant did not get along with attempt victim, defendant and attempt victim had exchanged words in days preceding shooting, possible gang rivalry, someone driving defendant's car had attempted to run over both victims on day before murder, defendant picked up several of his friends and eventually drove to one victim's house, defendant shouted out gang obscenities at victims, defendant began to drive away but suddenly stopped and backed up, one of defendant's passengers fired three shots at victims, and defendant then drove away); *Garcia v. State,* 882 S.W.2d 856, 859–860 (Tex.App.—Corpus Christi 1994)(gang membership, presence at offense, attacking passengers of car while primary actor beat the driver to death, participation with the primary actor in a previous assault of similar nature shortly before the subject offense). While the issue is close in this case, we hold that the following combined evidence was sufficient to permit a rational jury to infer that Holmes was a party to the crime, and hence, raises a fact issue as to Holmes' accomplice status: (1) Holmes' presence in the car with appellant when the crime occurred, (2) evidence that the crime was a gang-motivated crime, (3) Holmes' membership in the same gang as appellant, and (4) Holmes' efforts to cover up the crime. Because one of these factors is missing for both Valadez (did not cover up the crime) and Juarez (was not present during the crime), and no other evidence exists to link these participants to the crime, we find that the evidence was insufficient to raise a fact issue as to those witnesses. Hence, the trial court erred in refusing an accomplice-as-a-matter-of-fact instruction concerning Holmes, but the trial court did not err in failing to include an accomplice witness instruction regarding Valadez and Juarez.

◼ Having found error, we must determine whether or not appellant suffered harm. Because appellant requested an accomplice-as-a-matter-of-fact instruction as to Holmes, we analyze the record for "some harm" under *Almanza v. State,* 686 S.W.2d 157 (Tex.Crim.App.1985) (op. on

reh'g). *Id.* at 171. We find that the error was harmless. There was substantial nonaccomplice evidence linking appellant to the offense. Valadez and Juarez, who we have determined were not accomplices, both gave testimony connecting appellant to the offense. Valadez testified that he saw appellant take the SKS assault rifle out of the trunk of the car and bring the gun with him into the front seat. Then Valadez testified that appellant shot six or seven times out the window as the car drove by the victims' family home. Juarez testified that, on the night of the murders, appellant admitted to being the shooter in a drive-by shooting. She also testified that she saw appellant with the SKS assault rifle that night. And Juarez testified that appellant called from jail and instructed her to get rid of some guns.

Appellant also connected himself to the crime through his written words. After the offense, appellant wrote a letter to Luisa Escobar. In that letter appellant wrote that he had "really fucked [himself] this time," and he begged Escobar not to let anyone tell his son, Matthew, how rotten appellant had been. Near the end of the letter appellant wrote, "Matthew, well, son, your pops made a real big screw up this time." Appellant further wrote: "Just remember to always think before you do something. I never did. You see, I thought I had to always be the baddest around and I screwed myself trying in doing this."

Appellant wrote a second letter to Escobar in which appellant stated: "I was a bad boy out there, but don't let no one know. Okay? That's my big secret." The letter continued:

> I always had to be the star of the show. I don't know why. But I built Ridgemont, me, Creeper, and I built a reputation every cop and hoodlum knew about. Everyone knew, everyone knew that when it came to the streets I was king. They knew if they tried me, I'd put them hoes to rest.

Appellant could be harmed by the lack of an instruction if and only if the jury (1) believed Holmes' testimony, (2) disbelieved both Juarez and Valadez, and (3) believed as a factual matter that Holmes had participated in the murders as an accomplice. Although such a scenario is possible, the "some harm" test does not mandate reversal upon a showing of possible harm—it requires that actual harm be established. The appellate court reviews the evidence and any part of the record as a whole which may illuminate "the actual, not just theoretical, harm to the accused." *Almanza*, 686 S.W.2d at 174. Given the substantial amount of non-accomplice evidence connecting appellant to the crime, and the tenuousness of evidence that Holmes was an accomplice, we find that the trial court's error in failing to give an accomplice witness instruction concerning Holmes was harmless. Points of error eleven through thirteen are overruled.

### B. Ineffective Assistance of Counsel

In point of error fourteen, appellant contends that he was denied the effective assistance of counsel guaranteed by the federal constitution because counsel failed to request accomplice-witness instructions regarding Johnny Valadez's and Regina Juarez's testimony. Appellant purports to raise the same argument under the state constitution in his fifteenth point of error.

Our holding in points of error twelve and thirteen defeats appellant's present contention. As Valadez and Juarez were not accomplice witnesses, counsel did not err in failing to request accomplice-witness instructions regarding their testimony. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Hernandez v. State*, 726 S.W.2d 53 (Tex. Crim.App.1986). Points of error fourteen and fifteen are overruled.

### C. Extraneous–Offense Evidence

In point of error sixteen, appellant argues that the trial court erred in allowing Evaristo Rodriguez to testify about three gang-related offenses which occurred at his home, the site of the offense, in the months preceding the offense. Appellant argues that this evidence was irrelevant, TEX. R. EVID. 401, et. seq., and constituted an inadmissible extraneous offense, TEX. R. EVID. 404.

Rodriguez testified that he had put his house on the market prior to the offense because his house had been targeted by the "La Raza" gang. He testified that there had been a drive-by shooting on July 10, 1995, that the next day, "La Raza" had been painted on his garage, and that the rear window of his daughter's car had been smashed. Rodriguez speculated that his daughter's relationship with a member of the H–Town Crips was the reason "La Raza" targeted his home.

We believe that the evidence was relevant to explain the context of gang rivalries in which the offense occurred. The evidence furthered the State's theory that the Rodriguez's home was a target of appellant's gang. That the house was a target of the gang has some tendency to show that appellant had a motive to shoot and kill persons at that house.

As for appellant's Rule 404 claim, error was not preserved. Appellant made only a relevancy objection at trial. Such an objection does not preserve error concerning a Rule 404 extraneous offense claim. *Camacho v. State*, 864 S.W.2d 524, 533 (Tex.Crim.App.1993), *cert. denied*, 510 U.S. 1215, 114 S.Ct. 1339, 127 L.Ed.2d 687 (1994). Point of error sixteen is overruled.

In point of error seventeen, appellant complains of the admission of Maurice Arguenta's testimony that, earlier on the night of the offense, appellant along with some other members of his gang got involved in an altercation with Sam Lopez, allegedly a relative of an H–Town Crips gang member. Arguenta testified that appellant threatened Lopez with a gun. Appellant argues that the evidence was irrelevant, TEX.R. EVID. 401, et. seq., more prejudicial than probative, TEX. R. EVID. 403, and inadmissible extraneous-offense evidence, TEX. R. EVID. 404(b).

Under Rule 404(b), evidence of an extraneous offense may be admitted if it is relevant as to motive, identity, intent, opportunity, preparation, plan or absence of mistake. In the case at bar, the State's theory of the offense was that appellant opened fire into the group gathered in front of a home in revenge for the murder of a fellow gang member. Various witnesses testified that, at the time of the offense, the H-town Crips and La Raza were at odds. In this context, Arguenta's testimony was most relevant as to appellant's motive and intent on the night of the offense. And, in the context of the entire record, it cannot be said that Arguenta's testimony was more prejudicial than probative. The elements of the testimony which might be considered prejudicial to appellant—that he was a gang member, that he had a violent grudge against the H-town Crips, that he carried a deadly weapon and that he did not hesitate to threaten others with this gun—were facts established elsewhere in the record. Point of error seventeen is overruled.

## III. MITIGATION SPECIAL ISSUE

In points of error eighteen through twenty-one, appellant asserts that the trial court erred in failing to instruct the jury on the State's burden of proof as to the mitigation special issue.[8] Tex.Code Crim. Proc. art. 37.071 Sec. 2(e). In point of error twenty-two, appellant asserts that trial court erred in sustaining the State's objection to his argument asserting that the State bears a burden of proof regarding the mitigation special issue.

Appellant concedes that the precedent is clearly against him but argues that our refusal to place a burden on the State and to review the evidence gives the jury the untrammeled discretion held unconstitutional in *Furman v. Georgia*, 408 U.S. 238,

92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). Appellant is correct that the precedent is directly on point against his argument. We refer appellant to our explanation of the flaws in his argument in *Lawton v. State*, 913 S.W.2d 542, 558 (Tex.Crim.App. 1995); *see also Howard v. State*, 941 S.W.2d 102, 119 (Tex.Crim.App.1996). Appellant presents no new argument to persuade us to abandon our precedent. Points of error eighteen through twenty-two are overruled.

MEYERS, J., concurs with note.
WOMACK, J., filed an opinion joined by JOHNSON, J., which concurred in point of error ten and otherwise joined the opinion of the Court.

MEYERS, J., concurs with note:

Under the specific facts of this particular case, I agree that the error presented in point of error ten, in misdefining "knowingly" was not egregious. However, I cannot agree that a "knowing murder" under Penal Code § 19.02(b)(1), which is defined by caselaw as a result of conduct offense, is also always by definition, a nature of conduct offense.

WOMACK, J., filed a concurring opinion in which JOHNSON, J., joined.

I join the judgment of the Court and, except as to Point of Error Ten, its opinion. I agree that the trial court erred when it defined "knowingly" in terms of the nature of conduct, and that the error was not objected to, and that it does not require reversal. I do not subscribe to the statement that "a knowing murder under 19.02(b)(1) is a result-of-conduct offense which by definition is also a nature-of-conduct offense" (*ante* at 640). And I think we should decide the question of

---

**8.** Appellant argues in point eighteen that the trial court's error denied him due process under the federal constitution. U.S. Const. amend. 5 and 14. He raises the same arguments in point nineteen under due course of law. Tex. Const. art. 1, § 19. In his twentieth and twenty-first points, appellant argues

the trial court's error amounted to "cruel and unusual punishment" and "cruel or unusual punishment," respectively. These latter references are, of course, to the federal and state constitutions, respectively. U.S. Const. amend. 8 and 14; Tex. Const. art. 1, § 13.

harm by doing more than looking at the statutes. *See Almanza v. State*, 686 S.W.2d 157 (Tex.Cr.App.1984).*

---

* As a statement on how to determine the severity of any egregious error in the charge we cannot improve on the following from the court of appeals in 1890:

> 'But in determining whether the error is material ... we are to look to the whole record bearing upon the subject. What was the nature of the testimony supporting the verdict? Was it cogent and overwhelming? What was the character of the testimony presenting the phase or theory of the case omitted to be noticed in the charge, and upon which omission error is assigned? Was it all reasonable? Did it present a theory which a reasonable mind could entertain, or was it supported by such testimony as was remotely calculated to destroy the State's case when considered in connection with the other testimony in the case, as well as the charge as a whole? Was the phase of the case simply an addition to the case as made by the State and consistent therewith, or was it in direct conflict with the State's theory? These are all important matters to be considered in passing upon the (degree of harm) in the omission or error....'

*Davis v. State*, 28 Tex.Ct.App. 542, 13 S.W. 994, 995 (1890), *writ of error dism'd*, 139 U.S. 651, 11 S.Ct. 675, 35 L.Ed. 300 (1891)." *Almanza v. State*, 686 S.W.2d at 172 (footnote omitted).