

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 2-07-079-CR

LESTER EMMETT MESHACK                                 APPELLANT

V.

THE STATE OF TEXAS                                        STATE

------------

## FROM THE 371ST DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. INTRODUCTION

Appellant Lester Emmett Meshack appeals his conviction for theft of $1,500 to $20,000. In one point, he argues that the trial court erred by allowing a co-defendant, who had already pleaded guilty to the offense, to make a blanket assertion of the Fifth Amendment privilege against self-incrimination. We will affirm.

---

[1] *See* Tex. R. App. P. 47.4.

## II. FACTUAL BACKGROUND

On May 17, 2004, as Ryan Riekels monitored the cameras in Neiman-Marcus's loss prevention department, he saw two individuals walk into the store, and one of the individuals was carrying a large Bed Bath and Beyond shopping bag. Riekels described the two individuals as African-American males of medium build, one of whom was wearing white pants and a khaki t-shirt and the other of whom was wearing a floral print khaki t-shirt and brown dress pants.

As soon as the men entered the store, they went immediately into the men's suit department and started nervously looking at suits. The individual in the floral print shirt, who was later identified as Meshack, selected a suit and passed it to the other individual, who was later identified as Paul Mitchell. Mitchell rolled up the suit and put it into the bag he was carrying. Meshack performed "blocking" to keep Mitchell out of the camera's view. Meshack then handed Mitchell a second suit. Meshack and Mitchell thereafter left the store with Mitchell carrying the large Bed Bath and Beyond bag that he had brought in with him. Neither Meshack nor Mitchell paid for the suits that were placed in the bag.

Ricardo Resendez, the loss prevention manager, identified himself as "Neiman-Marcus loss prevention" and handcuffed Meshack. Riekels also

identified himself as "Neiman-Marcus loss prevention," and Mitchell went back inside the store and dumped three suits[2] out of the bag before attempting to flee. Riekels stopped Mitchell and restrained him after he became combative. Both Resendez and Riekels testified that the bag that Mitchell had been carrying was lined with duct tape and metal or foil to defeat sensor-tagging devices.

During the trial, the State played a DVD containing footage from the Neiman-Marcus security cameras that recorded the theft, and Riekels narrated for the jury what was happening. At the conclusion of the trial, the jury found Meshack guilty, and the trial court sentenced him to six years' confinement. This appeal followed.

### III. HARMLESS ERROR

In his sole point, Meshack argues that the trial court erred by allowing defense witness Mitchell to make a blanket assertion of his Fifth Amendment privilege against self-incrimination to avoid testifying when he was no longer in legal jeopardy for the offense about which he was being called. Specifically, Meshack argues that Mitchell had clearly indicated that he had pleaded guilty to the theft offense and was therefore no longer in legal jeopardy for that charge.

---

[2] The record does not specify who selected the third suit and placed it into the bag.

3

It is an undisputed rule of law that a defendant has a right to call a co-defendant as a witness. *Washington v. Texas*, 388 U.S. 14, 23, 87 S. Ct. 1920, 1925 (1967); *Cunningham v. State*, 500 S.W.2d 820, 823 (Tex. Crim. App. 1973). This right is not absolute, however. *Palomo v. State*, 925 S.W.2d 329, 334 (Tex. App.—Corpus Christi 1996, no pet.). If a potential defense witness has a Fifth Amendment privilege against self-incrimination, that privilege overrides a defendant's right to compel testimony. *Bridge v. State*, 726 S.W.2d 558, 567 (Tex. Crim. App. 1986). Moreover, when a co-defendant has pleaded guilty and has been sentenced in connection with the offense, he may still properly invoke his Fifth Amendment privilege against self-incrimination because if his testimony contradicts any previous judicial admissions, he could be subject to the charge of perjury. *Palomo*, 925 S.W.2d at 334.

Assuming Meshack's argument—that the trial court abused its discretion by excluding Mitchell's testimony—is correct, any such error is constitutional, and we apply rule 44.2(a) to determine whether the trial court's error in allowing Mitchell to assert his Fifth Amendment privilege against self-incrimination was harmless beyond a reasonable doubt. *See* Tex. R. App. P. 44.2(a); *Dumas v. State*, 812 S.W.2d 611, 614 (Tex. App.—Dallas 1991, pet. ref'd) (applying rule 81(b)(2)).

4

Our harmless error analysis should not focus on the propriety of the outcome of the trial; instead, we should calculate as much as possible the probable impact on the jury in light of the existence of other evidence. *Wesbrook v. State*, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000), *cert. denied*, 532 U.S. 944 (2001). We consider the source and nature of the error, the extent that it was emphasized by the State, its probable collateral implications, the weight a juror would probably place on the error, and whether declaring it harmless would be likely to encourage the State to repeat it with impunity. *Harris v. State*, 790 S.W.2d 568, 587 (Tex. Crim. App. 1989). This requires us to evaluate the entire record in a neutral, impartial, and even-handed manner, not "in the light most favorable to the prosecution." *Id.* at 586.

Here, as Riekels narrated, the jury watched footage from the Neiman-Marcus hidden cameras that captured Meshack's and Mitchell's entry into the store and their movements within the store. The jury watched as Meshack selected two suits and gave them to Mitchell. As Mitchell then rolled up the suits and placed them in a large shopping bag that had been specially equipped to defeat sensor-tagging devices, Meshack acted as a blocker to hide Mitchell's actions. Because the jury saw footage of Meshack selecting the suits that were stolen and acting as a blocker, it is highly unlikely that Mitchell's testimony could have persuaded them that Meshack played no role in the theft. Thus,

5

after carefully reviewing the record and performing the required harm analysis under rule 44.2(a), we hold beyond a reasonable doubt that any trial court error in permitting Mitchell to invoke his Fifth Amendment rights did not contribute to Meshack's conviction or punishment. *See* Tex. R. App. P. 44.2(a); *Decker v. State*, 734 S.W.2d 393, 395–96 (Tex. App.—Houston [1st Dist.] 1987, pet. ref'd) (holding that trial court's error in excluding testimony of appellant's wife was harmless because evidence of appellant's marital relationship was placed before the jury by his own testimony). We therefore overrule Meshack's sole point.

## IV. CONCLUSION

Having overruled Meshack's sole point, we affirm the trial court's judgment.

SUE WALKER
JUSTICE

PANEL: HOLMAN, GARDNER, and WALKER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: November 6, 2008

6