In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-00-538 CR


____________________



ROY EDWARD LYNCH, JR., Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 260th District Court


Orange County, Texas


Trial Cause No. D000270-R






O P I N I O N


 A jury found Roy Edward Lynch, Jr., guilty of aggravated robbery and assessed his
punishment at eighty five years in the Texas Department of Criminal Justice, Institutional
Division, along with a fine of $10,000. With three issues, Lynch appeals. 

 In his first issue, Lynch contends the evidence was insufficient to support his
conviction. When reviewing the legal sufficiency of the evidence, we consider the
evidence in the light most favorable to the verdict and determine whether any rational trier
of fact could have found the essential elements of the crime beyond a reasonable doubt. 
Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573
(1979). When reviewing the factual sufficiency of the evidence, we view all the evidence
impartially and set aside the verdict only if it is so contrary to the overwhelming weight
of the evidence as to be clearly wrong and unjust. Cain v. State, 958 S.W.2d 404, 410
(Tex. Crim. App. 1997); Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). 
In our review, we must be careful not to intrude on the jury's role as the sole judge of the
credibility of the witnesses or the weight to be given their testimony. See Santellan v.
State, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997).

 According to Korey Bellard, he and Lynch drank beer and played video games at
Bellard's home on the evening of February 19, 2000, before leaving there around midnight
and going to Andrea Ryan's house. During the time at Bellard's home and the ride over
to Ryan's, Lynch started mentioning a need for money. Along with other persons, Bellard
and Lynch remained at Ryan's home for approximately two hours, drinking and playing
games. Then Bellard and Lynch left, taking Clarence Griffin and his cousin, Cetric, with
them. After dropping the Griffin relatives "off in Sunset" "a little bit after 2:00," Bellard
decided to visit his girlfriend, with whom he had earlier had a fight. Bellard passed by her
house, turned around, and then, at Lynch's request, dropped him off at the Exxon Speedy
Stop. Bellard next drove in the driveway of his girlfriend's home with the intent of going
inside, but decided instead to telephone her from the store. According to Bellard, he was
"tired" and "buzzed," and did not call his girlfriend. Rather, he parked his vehicle in
front of a dumpster between the store and his girlfriend's driveway and started to "doze
off." A few minutes later, Lynch got into the vehicle and he and Bellard drove off. 
Bellard noticed a truck following them and he became nervous. After picking up a chain
at Bellard's for Lynch's dog, Bellard took Lynch home, and Bellard went to his own
home. Lynch did not tell Bellard what happened at the store. Around 5 a.m. police
officers arrived at Bellard's home to question him, and he told them that Lynch had been
his passenger. Later in the day, he asked Lynch what had happened, and was told, "I told
you I was going to get my money." Lynch also indicated he drew a gun on the clerk and
customer in the store, but Bellard had not seen Lynch with a gun on the night of the
robbery. 

 Dennis Beers was working the graveyard shift at Speedy Stop at the time of the
robbery. At 3 a.m., the only other person in the store was a customer, Gary Foreman. 
Beers and Foreman were talking when a man, wearing a bandana entered the store, pointed
a gun at them, and then held the gun to Foreman's head, while telling Beers to hand over
the money. The robber alternated between pointing the gun at Beers's head and
Foreman's. After taking the money, the robber instructed them to lie on the floor. The
two lay on the floor for a few seconds before Beers called "911." Beers also testified that
Lynch was similar in size and shape to the person who robbed him, that he feared he
would be shot, and that approximately $90 was taken by the robber.

 Gary Foreman testified that he arrived at the store around 3 a.m. when the robber
came in and demanded money while pointing a gun at the clerk and him, Foreman. The
robber demanded money from both the clerk and Foreman. After taking the money, the
robber ordered them to get on the floor. Shortly afterwards, Foreman went outside to
determine which way the robber went. As he looked toward the carwash, he saw a vehicle
driving off. Foreman followed the vehicle to get the license number. After doing so, he
called the police on his cell phone and reported the information along with his location.
The vehicle was a dark colored Chevy Blazer, which the police traced to Bellard. 
Foreman testified that Lynch was about the same size and weight as the robber, who had
been disguised. Bellard testified he was 5'7" tall and weighed about 130 pounds. Joseph
Vonture, Lynch's only witness, conceded that Lynch was approximately 6' tall and
weighed around 195 pounds.

 Rodney Griffin verified that he, his brother, Clarence, and cousin, Cetric, were
with Bellard and Lynch during the late evening and early morning hours of February 19
and 20, just preceding the robbery. He further stated that occasion was the only one in
which they had all been together. According to Clarence Griffin, the group was together
only one time - on the occasion when Bellard and Lynch took him and his cousin home. In a statement given to the police on February 20, the afternoon after the robbery,
Lynch stated he was at home the evening before from approximately 9:30 p.m. until
around 12:30 or 1 a.m., when Bellard arrived, contending he was being followed. Lynch
got into Bellard's brown Chevy Blazer, and they went riding to see if the person would still
follow Bellard. After the two rode around for approximately thirty minutes without seeing
anyone, Bellard took Lynch home. 

 Joseph Vonture attempted to establish an alibi for Lynch. Vonture, who was living
in the Vinton, Louisiana area at the time of the robbery testified Lynch came to live with
him several weeks before the robbery, and lived there for approximately two months. On
direct, Vonture testified Lynch was with him the entire evening of February 20, sitting
around the house and playing dominoes until Vonture went to bed, around 3 or 4 a.m.,
presumably, but not clearly, meaning the morning of February 21. However, the robbery
occurred in the early morning hours of February 20, 2000. And, on cross-examination,
Vonture testified that he was not sure if Lynch was with him all day on February 19. 

 Having heard the witnesses' testimony and considering Lynch's statement - given
shortly after the robbery - that clearly places him in Orange County during the early
morning hours of February 20 and not in Louisiana, as Lynch argues, a rational trier of
fact could have found, beyond a reasonable doubt, that Lynch committed the robbery. 
Further, viewing all of the evidence impartially, we cannot conclude the evidence is so
weak, or the evidence preponderating against a guilty verdict to be so overwhelming that
a guilty verdict is clearly wrong and unjust. Issue one is overruled.

 In his second issue, Lynch maintains he was wrongly convicted on the
uncorroborated testimony of an alleged co-conspirator. Lynch argues that without the
testimony of Bellard, there is little to this case. However, Bellard was never charged with
an offense. And, Lynch did not object to the jury charge on the ground that it should have
instructed Bellard was an accomplice as a matter of law. Moreover, the jury was
instructed to disregard Bellard's testimony if it determined he was an accomplice and his
testimony was not corroborated by other evidence tending to connect Lynch with the
commission of the offense.

 The Texas Court of Criminal Appeals has explained:

 A person is an accomplice if he participates before, during, or after
the commission of the crime and can be prosecuted for the same offense as
the defendant or for a lesser-included offense. Mere presence during the
commission of the crime does not make one an accomplice, nor is one an
accomplice for "knowing about a crime and failing to disclose it, or even
concealing it. And we have held that, even where the evidence shows that
the witness was present during the commission of the crime and participated
in concealing that crime, such evidence was not sufficient to raise the issue
of accomplice status. . . .

Medina v. State, 7 S.W.3d 633, 641 (Tex. Crim. App. 1999), cert. denied, 529 U.S.
1102, 120 S.Ct. 1840, 146 L.Ed.2d 782 (2000) (citations omitted).

 Lynch erroneously assumes Bellard to be an accomplice. Though, as Lynch argues,
Bellard testified he was told by Lynch of plans to "do something" and even though Bellard
was present at the scene, this evidence is not enough to make him an accomplice. See id. 
Certainly, the jury was free to believe he was not one. See Solomon v. State, 49 S.W.3d
356, 362 (Tex. Crim. App. 2001). Issue two is overruled.

 In his third issue, Lynch asserts his trial counsel was ineffective. Lynch maintains
that, during voir dire, a potential juror, who was a county jail employee, stated he knew
Lynch because Lynch was incarcerated there. Trial counsel did not object to the
prospective juror's statement and made no motion for mistrial, both of which actions,
Lynch argues, would have been taken by a reasonably prudent attorney. Lynch further
argues there is a reasonable probability that, but for the omission, the jury's verdict would
have been different, and that there is "no way to say that this omission did not prejudice"
him. 

 To prevail on a claim of ineffective assistance of counsel, an appellant must show both
deficient conduct and prejudice. In other words, Lynch must demonstrate his attorney's
performance fell below an objective standard of reasonableness under prevailing professional
norms and there is a reasonable probability that but for his counsel's ineffectiveness, the
result would have been different. See Strickland v. Washington, 466 U.S. 668, 687-88, 694,
104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); Hernandez v. State, 988 S.W.2d 770, 772 (Tex.
Crim. App. 1999). There is a strong presumption that counsel's conduct fell within the wide
range of reasonable professional assistance. Jackson v. State, 877 S.W.2d 768, 771 (Tex.
Crim. App. 1994). "Any allegation of ineffectiveness must be firmly founded in the record,
and the record must affirmatively demonstrate the alleged ineffectiveness." Thompson v.
State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). The presumption of reasonable
effectiveness cannot ordinarily be overcome absent evidence in the record of the attorney's
reasons for his conduct. Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). 
Here, there is no record of the attorney's reasons, which may have included a desire not to
emphasize the information. An adequate record for appellate review usually is developed
in a motion for new trial hearing or on writ of habeas corpus, explaining counsel's thought
processes and trial strategy. Moreover, Lynch argues, but does not establish that but for
counsel's conduct, the result would have been different. Issue three is overruled. 

 We affirm the judgment and the sentence.

 AFFIRMED.

 ________________________________

 DON BURGESS

 Justice

Submitted on September 20, 2001 

Opinion Delivered October 10, 2001

Do not publish 


Before Walker, C.J., Burgess, and Gaultney, JJ.