NO. 12-03-00254-CR
 
IN THE COURT OF APPEALS

TWELFTH COURT OF APPEALS DISTRICT

TYLER, TEXAS


RONALD WAYNE TURNER,                           §     APPEAL FROM THE 3RD
APPELLANT

V.                                                                         §     JUDICIAL DISTRICT COURT OF

THE STATE OF TEXAS,
APPELLEE                                                        §     HOUSTON COUNTY, TEXAS





MEMORANDUM OPINION
            Ronald Wayne Turner appeals his conviction of murder, for which he was sentenced to
imprisonment for life. Appellant raises two issues on appeal. We affirm.

Background
            Appellant and the victim, Shawna Martinez, lived with Appellant’s parents, Curtis and Linda
Turner. On the morning of October 9, 2002, Appellant called to Linda Turner for help stating that
he could not wake up Martinez. Linda Turner went to Appellant’s room where Appellant was
attempting to revive Martinez, whose body was covered with bruises. Linda Turner subsequently
called 9-1-1. When the police arrived, Linda Turner gave them permission to search the premises,
which they did. Later that day, Linda Turner and Appellant went to the Grapeland Police
Department and each gave written statements.
            On October 12, 2002, Appellant was arrested in Elkhart, Texas on a misdemeanor warrant
by Texas Ranger William R. Flores, who was handling the investigation of the matter. Appellant
was read his Miranda


 warnings. Thereafter, Appellant waived his rights and agreed to submit to
interrogation. Following his four-hour interrogation, during which multiple breaks were taken,
Appellant gave a written statement. In his written statement, Appellant admitted to placing his
hands on Martinez’s mouth and throat briefly to keep her quiet while the two were arguing, but
denied killing her. After making the written statement, Appellant was permitted to call Linda
Turner. During the ensuing phone conversation, Flores overheard Appellant tell Linda Turner that
he had caused Martinez’s death by choking her. Appellant’s October 12 written statement as well
as his oral statement to Linda Turner were admitted into evidence over Appellant’s objection.
            Following the close of evidence and argument of counsel, a charge conference was
conducted. Appellant objected to the charge as follows:
 
I would request that the Charge with respect to murder under Paragraph 2 read as follows: A person
acts intentionally or with intent with respect to a result of his conduct when it is his conscious
objective or desire to cause the result. A person acts knowingly or with knowledge with respect to a
result of his conduct when he is aware that his conduct is reasonably certain to cause the result. That
is the charge that I would ask that the Court give with respect to the offense of murder and I would
object to the Court instructing the jury additionally on that matter with respect to the nature of his
conduct.

The trial court overruled Appellant’s objection. Ultimately, the jury found Appellant guilty as
charged. After a hearing on punishment, the trial court sentenced Appellant to imprisonment for life. 
This appeal followed.
Charge Error
            In his first issue, Appellant argues that the trial court committed reversible error in its charge
to the jury because it failed to limit its definitions of “intentionally” and “knowingly” to the result
of Appellant’s conduct. The court’s charge to the jury read, in pertinent part, as follows:
 
A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his
conduct when it is his conscious objective or desire to engage in the conduct or cause the result.
 
A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to
circumstances surrounding his conduct when he is aware of the nature of his conduct or that the
circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his
conduct when he is aware that his conduct is reasonably certain to cause the result.
 
            Murder is a “result of conduct” offense. See Medina v. State, 7 S.W.3d 633, 639 (Tex. Crim.
App. 1999); Cook v. State, 884 S.W.2d 485, 491 (Tex. Crim. App. 1994). As such, it is error for
a trial judge to not limit the definitions of the culpable mental states as they relate to the conduct
elements involved in the particular offense. See Cook, 884 S.W.2d at 491. In other words, a jury
charge that defines “intentionally” or “knowingly” as it relates to the nature of conduct as well as the
result of conduct is incorrect. See Medina, 7 S.W.3d at 639.
            While the State concedes that the trial court erred in its aforementioned instructions to the
jury, it contends that such error was not harmful. Not every error in a charge requires reversal. See
Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). We must conduct a harm analysis
to determine if the error caused actual harm to the defendant requiring reversal of the conviction. 
Id.; see also Hughes v. State, 897 S.W.2d 285, 296 (Tex. Crim. App. 1994). In assessing harm from
the inclusion of improper elements in the definitions of culpable mental states, we may consider the
degree, if any, to which the culpable mental states were limited by the application portions of the jury
charge. See Hughes, 897 S.W.2d at 296.
            When we review a charge for alleged error, we must examine the charge as a whole,
considering the workable relationship between the abstract parts of the charge and the application
part, which applies the abstract law to the facts of the case. See Caldwell v. State, 971 S.W.2d 663,
666 (Tex. App.–Dallas 1998, pet. ref’d). The abstract paragraphs of the charge instruct the jury
regarding the meaning of concepts and terms as used in the application paragraphs of the charge. 
Id. The application paragraph authorizes a conviction. See id.
            Where the application paragraph correctly instructs the jury, an error in the abstract
instruction is not egregious. See Medina, 7 S.W.3d at 640. In a scenario where the definitions of
intentionally and knowingly respectively set forth multiple, alternative types of conduct, it becomes
apparent which conduct element applies to which offense when such terms are viewed in their
factual context. See, e.g., Hughes, 897 S.W.2d at 296.
            In the case at hand, the application paragraph, with respect to murder, stated as follows:
 
Now if you find from the evidence beyond a reasonable doubt that on or about the 9th day of October,
2002, in Houston County, Texas, the defendant RONALD WAYNE TURNER, intentionally or
knowingly caused the death of an individual, Shawna Martinez, by strangling the said Shawna
Martinez with his hands or by the use of an unknown object then you will find the defendant guilty of
Murder as charged in the indictment.
 
As the application paragraph correctly instructed the jury that they must find beyond a reasonable
doubt that Appellant “intentionally or knowingly caused” the death of Shawna Martinez before it
could find Appellant guilty of murder, we hold that the fact that the abstract definition of
intentionally and knowingly was erroneous did not harm Appellant. See, e.g., Barcenes v. State, 940
S.W.2d 739, 744 (Tex. App.–San Antonio 1997, pet. ref’d).


 Appellant’s first issue is overruled.

                                           Motion to Suppress
            In his second issue, Appellant argues that the trial court erred in admitting statements
Appellant made following his arrest on October 12, 2002, which was illegal because it was not made
pursuant to a lawful arrest warrant. The State initially argues that Appellant has failed to preserve
error on his first issue because his objection to the trial court was not specific enough to apprise the
court of his complaint. We disagree.
Preservation of Error
            At the hearing on his motion to suppress, Appellant argued as follows:
 
I did have one additional objection that I think will be cured but I think I need to make for the record,
that is that there’s no evidence that he was in custody as a result of a lawful warrant.
              ....
 
I don’t think there’s any testimony that – I just want to be clear on this, there’s no testimony that there
was a lawful warrant that placed him in custody.
 
Furthermore, in his motion to suppress, Appellant argued that
 
[t]he alleged statements, both oral and written, were the product of an unlawful arrest, illegal
detention, and an unlawful search and seizure in direct violation of the Fourth and Fourteenth
Amendments to the United States Consitution and Article 38.23 of the Texas Code of Criminal
Procedure.
 
            To preserve a complaint for appellate review, a party must have presented to the trial court
a timely request, objection, or motion that states the specific grounds for the desired ruling. See Tex.
R. App. P. 33.1(a); Mosley v. State, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh’g). 
Furthermore, a complaint on appeal must comport with the trial objection in order to sufficiently
preserve error. See Curry v. State, 910 S.W.2d 490, 495 (Tex. Crim. App. 1995). 
            In the case at hand, Appellant argues that his October 12 statements, both oral and written,
were the product of an illegal warrantless arrest. We hold that when Appellant’s objection to the trial
court is considered in the context of a hearing on Appellant’s motion to suppress, and in conjunction
with Appellant’s written motion, it is satisfactory in accordance with Rule 33.1(a).
Standard of Review
            We review a trial court's ruling on a motion to suppress for abuse of discretion. See Villarreal
v. State, 935 S.W.2d 134, 138 (Tex. Crim. App.1996); Curry v. State, 965 S.W.2d 32, 33 (Tex.
App.–Houston [1st Dist.] 1998, no pet.). A trial court does not abuse its discretion when its decision
is at least within the zone of reasonable disagreement. See Montgomery v. State, 810 S.W.2d 372,
391 (Tex. Crim. App.1990) (op. on reh’g). 
            In reviewing the trial court’s ruling, we apply a bifurcated standard of review. See Carmouche
v. State, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); Hernandez v. State, 957 S.W.2d 851, 852
(Tex. Crim. App. 1998). We give almost total deference to the trial court’s determination of historical
facts, while conducting a de novo review of the trial court’s application of the law to those facts. See
Carmouche, 10 S.W.3d at 327. The trial court is the exclusive finder of fact in a motion to suppress
hearing, and as such, it may choose to believe or disbelieve any or all of any witness’s testimony. 
Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990). Furthermore, when, as in the instant
case, “the trial court fails to file findings of fact, we view the evidence in the light most favorable to
the trial court’s ruling and assume that the trial court made implicit findings of fact that support its
ruling as long as those findings are supported by the record.” State v. Ross, 32 S.W.3d 853, 855 (Tex.
Crim. App. 2000). If the trial judge’s decision is correct on any theory of law applicable to the case,
the decision will be sustained. Id. at 856.
Attenuation of Taint
            Assuming arguendo that Appellant’s arrest was not lawful, his statements would be admissible
nonetheless if the evidence reflects that the taints of such illegality, if any, was sufficiently attenuated. 
Otherwise tainted evidence is admissible if the connection between the illegal arrest and the means
through which the confession was secured has “become so attenuated as to dissipate the taint.” Wong
Sun v. United States, 371 U.S. 471, 491, 83 S. Ct. 407, 419, 9 L. Ed. 2d 441 (1963); Armstrong v.
State, 550 S.W.2d 25, 31 (Tex. Crim. App. 1976) (op. on reh’g). Thus, we must determine whether,
assuming establishment of the primary illegality, the evidence to which objection is made has been
derived by exploitation of that illegality or instead by means sufficiently distinguishable to be purged
of the primary taint. See Wong Sun, 371 U.S. at 488, 83 S. Ct. at 417-18. 
            A confession obtained through custodial interrogation after illegal arrest should be excluded
unless the confession is sufficiently an act of free will to purge the primary taint. See Sweeten v.
State, 667 S.W.2d 779, 781 (Tex. Crim. App. 1984). Texas applies the four-factor attenuation test
found in Brown v. Illinois, which is (1) whether Miranda warnings were given, (2) the temporal
proximity of the arrest and the confession, (3) the presence of intervening circumstances, and (4) the
purpose and flagrancy of the official misconduct. See Dowthitt v. State, 931 S.W.2d 244, 261 (Tex.
Crim. App. 1996); see also Brown v. Illinois, 422 U.S. 590, 603-04, 95 S. Ct. 2254, 2261-62, 45 L.
Ed. 2d 416 (1975)). The State has the burden of proving attenuation. See Garrison v. State, 642
S.W.2d 168, 169 (Tex. Crim. App.1982).
            In the case at hand, the record indicates that Appellant was arrested at 7:35 or 7:40 p.m. The
record further reflects that Appellant was interviewed in Constable Larry Bennett’s office for four
hours following his arrest. Although the passage of time herein is not extensive, passage of time,
alone, can never attenuate a confession. See Starkey v. State, 704 S.W.2d 805, 810 (Tex.
App.–Dallas 1985, pet. ref’d). 
            The State may also demonstrate attenuation of taint by demonstrating that intervening
circumstances existed, which purged the taint. Here, the evidence reveals that Appellant was
interviewed at Constable Bennett’s office for four hours. Flores testified that multiple breaks were
taken. Appellant was permitted to go outside the office to smoke. Appellant was permitted to use
the telephone. In one instance, a break was extensive enough to permit an officer to go to the grocery
store to pick up a soda or bottled water for them to drink. Ultimately, Appellant made a written
statement in which he admitted to placing his hands on Martinez’s mouth and throat briefly to keep
her quiet while the two were arguing, but denied killing her. Thereafter, Appellant requested, and was
permitted, to call his mother. During the ensuing phone conversation, Flores overheard Appellant
tell his mother that he caused Martinez’s death by choking her.
            Repeated Miranda warnings are another factor we must consider. Flores testified that he gave
Appellant Miranda warnings at Constable Bennett’s office by reading them to Appellant from the
printed material at the top of the statement form that Appellant signed upon completion of his written
statement. Flores testified that Appellant read the warnings out loud as well. Moreover, the 
Miranda admonition was inscribed at the top of each page of the voluntary statement forms signed
by Appellant.
             Finally, we find no evidence of purposeful or flagrant misconduct. Flores testified that
Appellant’s arrest was effected pursuant to a misdemeanor warrant. Appellant was informed that he
was not under arrest for Martinez’s murder. There is no evidence to suggest that the officers involved
were discourteous or dilatory. The evidence suggests that Appellant was neither rushed nor coerced
with respect to his statement from the time of his arrest forward.
            The exclusionary rule is based on twin policies of deterrence and judicial integrity. Starkey,
805 S.W.2d at 811. When there is a close causal connection between the illegal seizure and the
confession, not only is exclusion of the evidence more likely to deter similar police misconduct in the
future but also use of the evidence is more likely to compromise the integrity of the courts. Id. (citing
Dunaway v. New York, 442 U.S. 200, 219, 99 S. Ct. 2248, 2260, 60 L. Ed. 2d 824 (1979)). If,
however, the causal chain is broken by an independent act of free will, the policies of the exclusion
would not be furthered, and the confession should be admitted. Starkey, 704 S.W.2d at 811.
            We conclude that Appellant's uncoerced choice to make a both a written statement and,
subsequently, an oral confession during a telephone conversation with his mother could each
reasonably be construed by the trial court as sufficiently an act of free will to purge the primary taint
of the illegal arrest. Although Miranda warnings alone do not break the causal connection between
 

police misconduct and a subsequent statement, they are an important factor in determining whether
evidence is obtained by exploitation of an illegal arrest. Dunaway, 442 U.S. at 216-17, 99 S. Ct.
at 2258-59; Brown, 422 U.S. at 603, 95 S. Ct. at 2261; Foster v. State, 677 S.W.2d 507, 509 (Tex.
Crim. App.1984); Ussery v. State, 651 S.W.2d 767, 771 (Tex. Crim. App. 1983); Starkey, 704
S.W.2d 811. The repeated Miranda warnings in the instant case indicate both voluntariness and
an exercise of free will. See Starkey, 704 S.W.2d at 811. Moreover, the multiple recesses in the
interrogation served to further increase the divide between the alleged illegal arrest and Appellant’s
written statement. These factors coupled with the evidence indicating a total lack of purposeful or
flagrant misconduct, amount to a sufficient attenuation of taint in that they, together, indicate that
Appellant’s written statement was an independent act of free will. With regard to Appellant’s oral
confession, which Flores overheard, the fact that the statement was made during a phone
conversation Appellant initiated to his mother creates an even greater breach in the chain of alleged
illegal conduct and Appellant’s oral statement. Thus, we hold that the trial court did not abuse its
discretion in admitting the statements, both oral and written, made by Appellant on October 12,
2002. Appellant’s second issue is overruled.
 
Disposition
Having overruled Appellant’s issues one and two, we affirm the trial court’s judgment.
 
 
                                                                                                     JAMES T. WORTHEN 
                                                                                                                 Chief Justice
 
 
Opinion delivered December 15, 2004.
Panel consisted of Worthen, C.J., Griffith, J. and DeVasto, J.
 
 
 
 
 
 
 
(DO NOT PUBLISH)