Opinion issued June 7, 2007

















In The

Court of Appeals

For The

First District of Texas






NO. 01-03-01064-CR






DOUGLAS ALBERT DOUGHERTY, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 23rd Judicial District Court

Brazoria County, Texas

Trial Court Cause No. 41,314






MEMORANDUM OPINION ON REMAND FROM THE TEXAS COURT
OF CRIMINAL APPEALS


 A jury convicted appellant, Douglas Albert Dougherty, of recklessly, or with
criminal negligence, causing bodily injury to an elderly individual. See Tex. Pen.
Code Ann. § 22.04 (Vernon 2006). The trial judge assessed punishment at four
years' confinement. On appeal, appellant argued that the trial court's failure, sua
sponte, to limit the definitions of culpable mental states in the jury charge to the
results of the act was egregious error. This Court agreed, but found the error to be
harmless under Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). The
Court of Criminal Appeals held that by focusing solely on the jury charge in
determining harm, "the Court of Appeals failed to consider the other factors required
by Almanza." Dougherty v. State, No. PD-1411-05, slip op. at 2, 2006 WL 475802,
at *1 (Tex. Crim. App. March 1, 2006) (not designated for publication). Accordingly,
the Court of Criminal Appeals vacated the judgment of this Court and remanded the
case "for reconsideration of the harm arising from the jury charge error in light of all
the factors set forth in Almanza." Id.

BACKGROUND

 The facts, as set forth in our previous opinion, (1) are as follows: Appellant lived
in a mobile home on property owned by his 73-year-old mother, Marie Dougherty. 
Near the date of the offense, Dougherty wrote a letter to appellant telling him he
would have to move out of his trailer and get off her property. She also told appellant
he could not use the Dodge truck to go to work. Dougherty was very angry about a
woman who had been in appellant's trailer. Appellant went to Dougherty's house to
ask her if he could use the truck because he was afraid that he would lose his job. An
argument between the two ensued.

 Dougherty's neighbor, Johnny Dirzanowski, testified that on the day of the
offense he heard some yelling and the sound of glass breaking when he was in his
yard. The noise was coming from the direction of Dougherty's house. Dirzanowski
testified that he heard a male voice screaming, "I'm going to kill you" and "you are
going to be with dad." Dirzanowski knew that Dougherty's husband had recently
died and called 911.

 Deputy K. Jordan of the Brazoria County Sheriff's Office received a dispatch 
to Dougherty's home to investigate a family disturbance. As he walked up to the
house he heard loud voices inside. He heard a woman screaming, "I told you no.
Now leave me alone and get out of here." Jordan also noticed a broken window. 
When Jordan knocked on the door, the woman screamed, "Turn me loose. Let me go.
Let me get to the door." When Jordan entered the home, he saw a man and a woman
scuffling. The woman was trying to get to the door, while the man held her back by
grabbing her around the waist. Jordan grabbed appellant, and then another officer
detained him.

 Jordan testified that Dougherty was hysterical. When he asked her what had
happened, she told him that appellant had come to her house, that they got into an
argument, and that when she told appellant he could not use the truck, he became
furious, grabbed her, and threw her into a chair. The chair hit a window and broke
it. Appellant then grabbed a pillow and tried to smother Dougherty to keep her from
screaming. Dougherty told Jordan that appellant was trying to kill her. Dougherty
told Jordan that appellant said that he would send her to be with his father and that
he would kill her before he would let her send him back to prison. Jordan saw
scrapes, bruises, and a small cut on Dougherty's right arm. He also noticed that
Dougherty had blood on her dress near her left buttock. Jordan took a written
statement from Dougherty, which she signed in his presence.

 Susie Bundick, the victim's daughter, testified that on the day of the offense,
her mother called and said that appellant had tried to kill her. When Bundick got to
Dougherty's house, the police were already there. Dougherty kept repeating that
appellant had tried to kill her. Bundick noticed bruising on Dougherty's arms and a
cut on her buttock. She checked Dougherty's blood pressure and determined that it
was 220 over 150. Dougherty told Bundick that appellant had pushed her and then
tried to cover her face with a pillow. Dougherty said that the bruises on her arms
were from where appellant held and shoved her and that the cut on her buttocks came
when appellant shoved her into a chair with broken glass in it. Dougherty dictated
a statement to the police, Bundick wrote it down, and Dougherty signed it.

 Katrina Bright, Dougherty's granddaughter, testified that on the day of the
offense, her mother called her to come over to Dougherty's house. When Bright, an
emergency medical technician, got to her grandmother's house, she noticed that
Dougherty had contusions, abrasions, and a 3-inch cut on her buttocks. Dougherty,
who was hoarse and physically shaking, told Bright that the bruises on her arms were
caused by appellant's holding her. Dougherty also told Bright that the cut on her
buttocks happened when appellant shoved her into a chair, the chair broke a window,
then appellant shoved her back into the chair on the broken glass. Bright was present
when her grandmother gave her statement to the police.

 In contrast to the State's version of the evidence, appellant testified that he
went to his mother's house, where they argued about the woman in appellant's trailer
and appellant's use of the truck. Appellant testified that he did not intend to injure
his mother. He claimed that he put his hand on the back of the chair and that the chair
struck the window and broke it. He claimed that he did not push Dougherty, but that
she calmed down, sat in the chair, and cut herself. Appellant claimed that he did not
have a pillow or try to smother Dougherty, but then admitted throwing a pillow on the
floor because he was angry. Appellant did not know where Dougherty's cuts came
from, but he testified that she did have 10 cats. He claimed that he did not give her
a bear hug, but did put his arms around her to calm her down because she was
screaming. He testified that he did not have his hands on Dougherty when Deputy
Jordan entered the house.

 Dougherty also testified at trial and recanted her earlier statements about
appellant's trying to kill her. Dougherty testified that the cats caused some of the
scratches on her arms and that some of the injuries were the result of aspirin therapy. 
Dougherty testified that appellant did not throw her into the chair, but that he
accidentally broke the window when he pushed in her chair while he was trying to
calm her down. Dougherty testified that she did not remember giving any statements
to the police: "I don't remember giving a statement. I might have said anything, but
I was too upset."

 A grand jury indicted appellant on October 11, 2001 for "intentionally and
knowingly caus[ing] bodily injury to Marie Dougherty, a person sixty-five (65) years
of age or older, by grabbing Marie Dougherty and pushing her." The trial judge
instructed the jury on this third degree felony offense, as well as the lesser-included
offence of "injury to an elderly individual, a state jail felony." The jury found
appellant guilty of "injury to an elderly individual, a state jail felony." 

DISCUSSION


Error Restated--Failure to Limit Definitions of Culpable Mental States

 In appellant's second point of error, he argued that the trial court erred because
it did not sua sponte limit the definitions of the culpable mental states in the jury
charge to the results of appellant's conduct. 

 A grand jury indicted appellant for "intentionally and knowingly caus[ing]
bodily injury to Marie Dougherty, a person sixty-five (65) years of age or older, by
grabbing Marie Dougherty and pushing her." See Tex. Pen. Code Ann. § 22.04
(Vernon 2006). The trial court instructed the jury it could find appellant guilty of
either the third degree felony of intentionally or knowingly causing bodily injury to
Dougherty, or the state-jail felony of recklessly or with criminal negligence causing
bodily injury to Dougherty. See Tex. Pen. Code Ann. § 22.04(a)(3), (f) (Vernon
2006). 

 The trial court, using the culpable mental state definitions from the Penal Code,
instructed the jury in the abstract portion of the charge as follows:

 A person acts intentionally, or with intent, with respect to the nature
of his conduct or to a result of his conduct when it is his conscious
objective or desire to engage in the conduct or cause the result.

 

 A person acts knowingly or with knowledge, with respect to the
nature of his conduct or circumstances surrounding his conduct when
he is aware of the nature of his conduct or that the circumstances
exist. A person acts knowingly or with knowledge, with respect to a
result of his conduct when he is aware that his conduct is reasonably
certain to cause the result.


 A person acts recklessly, or is reckless, with respect to the
circumstances surrounding his conduct or to the result of his conduct
when he is aware of but consciously disregards a substantial and
unjustifiable risk that the circumstances exist or the result will occur.
. . . 


 A person acts with criminal negligence, or is criminally negligent,
with respect to circumstances surrounding his conduct or the result of
his conduct when he ought to be aware of a substantial and
unjustifiable risk that circumstances exist or the result will occur. . .
.


(Emphasis added); see Tex. Pen. Code Ann. § 6.03(a)-(d) (Vernon 2006).

 Appellant contends the trial court erred when it failed to limit the definitions
of the culpable mental states because the definitions allowed the jury to convict
appellant based on an intent to perform the conduct rather than an intent to cause
the result of his conduct. See Haggins v. State, 785 S.W.2d 827, 828 (Tex. Crim.
App. 1990). Injury to an elderly person is a result-oriented crime. See id. 
Appellant is correct that the trial court should have limited the definitions in the jury
charge "to the kind of mental state which the . . . statute criminalizes." Id. Thus,
we turn to the issue of whether appellant was harmed.


Error Analysis of Almanza Factors 

 Appellant did not object to the charge; therefore we will reverse only "if the
error is so egregious and created such harm that [appellant] 'has not had a fair and
impartial trial'--in short 'egregious harm.'" Almanza, 686 S.W.2d 157 at 171. To
conduct an egregious harm analysis, we consider "[1] the entire jury charge, [2] the
state of the evidence, including the contested issues and weight of probative
evidence, [3] the argument of counsel and [4] any other relevant information
revealed by the record of the trial as a whole." Id. 

 The Entire Jury Charge

 The first Almanza factor requires us to consider the jury charge as a whole.

 In the application paragraphs, the trial court charged the jury,

 Now if you find from the evidence beyond a reasonable doubt that .
. . the defendant did then and there intentionally or knowingly cause
bodily injury to Marie Dougherty . . . then you will find the defendant
guilty of injury to an elderly individual, a third degree felony, as
charged in the indictment. . . .


 Now if you find and believe beyond a reasonable doubt that . . . the
defendant . . . did then and there recklessly or with criminal
negligence cause bodily injury to Marie Dougherty . . . then you will
find the defendant guilty of injury to an elderly individual, a state jail
felony . . . .


Although the trial court gave the full statutory definitions of the culpable mental
states in the abstract portion of the charge, the court properly limited the definitions
in the application paragraphs. Thus, the jury could only convict appellant if it found
that appellant intentionally, knowingly, recklessly, or with criminal negligence
caused Dougherty's injuries.

 The Court of Criminal Appeals has held, under similar circumstances, that
when the application paragraph correctly instructs the jury, an error in the abstract
instructions is not egregious. See Patrick v. State, 906 S.W.2d 481, 491-93 (Tex.
Crim. App. 1995). In Patrick, the trial court did not properly limit the definitions
of the culpable mental states for the result-oriented crime of capital murder. Id. at
491-93. The definitions were, however, limited to the result of the conduct in the
application paragraph. Id. at 493.

 The court first noted that the word "intentionally" modified the phrase "cause
the death" in the application paragraph. Id. The court reasoned that the jury
understood that the "result of conduct" language in the definition applied to the
"cause the death" language in the application paragraph. Id. Thus, the court held
that the application paragraph properly instructed the jury to apply only the
appropriate portion of the broad definitions and found the trial court did not harm
the defendant when it failed to limit the definitions to the result of the defendant's
conduct. Id. at 493. 

 In this case, the trial court did not limit the definitions of the culpable mental
states to the result of appellant's conduct. However, as in Patrick, the application
paragraph correctly instructed the jury on the law. Additionally, the applicable
mental states here modified "cause bodily injury to Marie Dougherty" in the
application paragraph. Appellant's reliance on Banks v. State is misplaced. See 819 S.W.2d 676, 678-81 (Tex. App.--San Antonio 1991, pet. ref'd). In Banks, the court failed to limit the
definitions of the culpable mental states for a result-oriented crime, but also failed to
limit the application paragraph to the results of the conduct. Id. at 680. 

 Because the application paragraph correctly instructed the jury on the law, the
first Almanza factor favors finding the error to be not egregious.

 The State of the Evidence

 The State's evidence in the case was legally and factually sufficient, despite
Dougherty's having recanted. The State presented Dougherty's neighbor,
Dirzanowski, who testified that he called the police after hearing screams coming
from Dougherty's house. Further, the State produced the testimony of Deputy Jordan,
who saw appellant grabbing Dougherty around the waist and also heard Dougherty
say that appellant was trying to kill her, had tried to smother her with a pillow, and
had pushed her into a chair, causing her to cut her buttocks. The State also produced
the testimony of Dougherty's daughter and granddaughter, both of whom testified
that Dougherty told them appellant was trying to kill her and had pushed her into a
chair. 

 In his favor, appellant presented his own testimony and that of his mother, the
victim. Dougherty denied telling Deputy Jordan, Bundick, or Bright that appellant
tried to kill her. She admitted she was angry and hysterical during the occurrence and 
believed she would say anything without knowing or meaning what she said. 

 Appellant's own testimony was consistent with Dougherty's. He testified that
he did not hurt Dougherty, but was just trying to calm her down. Appellant testified
that he never pushed, cut, or tried to suffocate Dougherty in any way. Appellant also
presented the testimony of his cousin, Janet Badger, who stated that Dougherty could
get extremely angry at times and yell and scream. Badger also stated she never
observed any violence accompanying Dougherty's expression of anger. The jury was
entitled to believe the testimony of Deputy Jordan and Dougherty's daughter and
granddaughter over the testimony of appellant, a convicted felon, and Dougherty, his
mother, especially in light of Dougherty's prior inconsistent statements to police.

 Because there was conflicting evidence of appellant's mens rea, we find that
the state of the evidence in this case--the second of the Almanza factors--is neutral
on whether we should find the error to be egregious.


 The Argument of Counsel

 Appellant argues that the prosecutor's argument in this case caused the error
in the charge to be egregious. Specifically, appellant points out that the prosecutor
argued that appellant "[i]ntentionally and knowingly performed an act and that caused
an injury and he doesn't have to intend the injury. Just the act." 

 While we agree that this is an incorrect statement of the law in this case, (2) we
must examine the State's entire argument to determine whether the prosecutor's
argument contributed to the jury charge error in such a way to render the error
egregious. The prosecutor's argument, in full, was as follows:

 He told you during the altercation I put my hand on the
chair, it blew back, it hit the window, glass broke. She sat
back down in it, she cut herself. I asked him, "Mr.
Dougherty, you meant to put your hand on that chair, the
glass broke, you saw her sit down in it. She would not
have been cut were it not for your putting your hand on the
chair and breaking the glass."


 "That's true, ma'am." So when you go and you're reading
your charge you don't have a problem. You don't have a
problem because he told you he did it. It's done. The only
job you have to do--the only work you are going to have
to do is decide when you go back there what is he guilty of. 
Is it the third degree felony that he intentionally, knowingly
did it, or is it the state jail felony that he did it recklessly? 
Well, I asked him, "Did you mean to put your hand on the
chair," and he said, "Yes, ma'am."


 And when you are reading your charge and then you are
reading the mental states on page 2, a person acts
intentionally or with intent with respect to the nature of his
conduct or to a result of his conduct when it is his
conscious objective--yes, I mean to put my hand on the
chair--or desire to engage in the conduct or cause the
result.

 

 I think what he told you today is I didn't mean to cut her,
though. But did he mean to put his hand on the chair? He
said to you, yes, he did. And you set it in motion and the
glass is broken and your mother is cut.


 Knowingly. A person acts knowingly or with knowledge
with respect to the nature of his conduct or to
circumstances surrounding conduct when he's aware of
the nature of his conduct. "Mr. Dougherty, you put your
hand on that chair?" "Yes, I did."


 Start the wheel in motion. A person acts knowingly or with
knowledge with respect to a result of his conduct when he
is aware that his conduct is reasonably certain to cause a
result. This is the house he grew up in. He had a great
deal of knowledge about the chair and the window and
where it was seated in that room and that it was right up
against a pane of glass. And there was also testimony that
the strings on the chair aren't working any more. That
came from Mrs. Dougherty. It came from the defense. But
in a heated argument I'm going to walk over in an attempt
to calm my mother and come down on the chair that sits up
against a pane of glass. He was aware that his conduct is
reasonably certain to cause the result.


 That's knowingly. You act knowingly. And I submit to
you he acted knowingly when he pushed her down in that
chair, even if we say he just pushed the chair causing that
glass to break and cutting her.


 While portions of the State's argument do improperly focus on the defendant's
conduct, rather than whether he intended the result of his conduct, the argument,
when taken as a whole, is that appellant acted "knowingly" when he pushed the chair. 
That is, appellant was reasonably certain when he pushed the chair that the glass
would break and injure Mrs. Dougherty.

 In a murder case, the Court of Criminal Appeals has held that "for knowing
murders, the distinction between result of conduct and nature of conduct blurs
because awareness of the result of the conduct necessarily entails awareness of the
nature of the conduct as well." Medina v. State, 7 S.W.3d 633, 640 (Tex. Crim. App.
1999). A knowing murder is a result-of-conduct offense, which, by definition, is also
a nature-of-conduct offense. Id.

 The reasoning of Medina is equally applicable to this case. By arguing that
appellant acted knowingly when he pushed the chair, the State was also arguing that
appellant was reasonably certain that his conduct would result in injury to Mrs.
Dougherty.

 Because parts of the prosecutor's argument were incorrect, and other parts
correctly asked the jury to consider whether appellant's conduct was reasonably
certain to cause the resulting injury, the third Almanza factor is neutral on whether we
should find the error to be egregious.

 Other Relevant Information

 Finally, we note that, although appellant was charged with the third degree
felony offense of injury to an elderly individual, he was convicted of the lesser
offense of reckless or criminally negligent injury to an elderly individual, a state jail
felony. The jury instructions in the abstract paragraph, as they relate to the lesser
offense, were not erroneous because they did not include the "nature of conduct"
language found in the paragraphs relating to the greater offense.

 Because the abstract paragraph and the application paragraphs were both
correct as they relate to the lesser offense of reckless or criminally negligent injury
to an elderly individual, and because appellant was convicted of the lesser offense,
the fourth Almanza factor favors finding the error harmless.

CONCLUSION


 After considering all the factors set forth in Almanza, we find the error in the
abstract portion of the jury charge to be not an egregious error.

 


 We affirm the judgment of the trial court.





 Sherry Radack

 Chief Justice


Panel consists of Chief Justice Radack and Justices Higley and Bland.


Do not publish. Tex. R. App. P. 47.2(b).



1. Dougherty v. State, No. 01-03-01064-CR, 2005 WL 1704882 (Tex. App.--Houston [1st
Dist.] March 10, 2005), reversed, No. PD-1411-05, 2006 WL 475802 (Tex. Crim. App.
March 1, 2006). 
2. We note that appellant did not object to the prosecutor's argument during trial, and thus he
could not complain about it on appeal. Cockrell v. State, 933 S.W.2d 73, 89 (Tex. Crim.
App. 1996). Nevertheless, we will consider the argument in connection with our Almanza
analysis.