02-10-172-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-10-00172-CR

 

 


 
 
 John Dewayne Franklin
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

 

FROM THE 297th
District Court OF Tarrant COUNTY

----------

 

MEMORANDUM
OPINION[1]

----------

 

          Appellant
John Dewayne Franklin appeals his conviction for capital murder.  See
Tex. Penal Code Ann. § 19.03(a)(2) (Vernon Supp. 2010).  We will affirm.

          On
October 14, 2007, Franklin and Sammie Lee Hicks Jr. were driving in Franklin’s
blue Cadillac when they noticed a white Suburban that looked like it was being
driven by a drunk driver.  Franklin and Hicks decided to follow the Suburban
and rob the individuals who were inside—Pedro Mendoza and Anastacio Zavala.  Once
the Suburban parked at the apartment complex where Mendoza lived, Franklin and
Hicks, who were carrying loaded guns, approached the vehicle and robbed Mendoza
and Zavala.  During the course of the robbery, Franklin shot Mendoza twice,
killing him.  A jury convicted Franklin of capital murder, and the trial court
sentenced him to life imprisonment without parole.[2]
 Hicks entered into a plea agreement with the State and testified against
Franklin at his trial.[3]

          In
a single point, Franklin argues that the State did not present sufficient
evidence to corroborate Hicks’s accomplice-witness testimony.[4]
 He contends that the State’s case against Franklin “indispensably rests on”
Hicks’s testimony, which “establishes only that the offense occurred” and that
Franklin “might have been present at the scene.”

          Code
of criminal procedure article 38.14 provides that a defendant cannot be
convicted of an offense upon the testimony of an accomplice without other corroborating
evidence “tending to connect” the defendant to the offense.  Tex. Code Crim.
Proc. Ann. art. 38.14 (Vernon 2005); see Simmons v. State, 282
S.W.3d 504, 505 (Tex. Crim. App. 2009).  The accomplice-witness rule is a
statutorily imposed sufficiency review and is not derived from federal or state
constitutional principles that define the legal and factual sufficiency
standards.  Cathey v. State, 992 S.W.2d 460, 462–63 (Tex. Crim. App.
1999), cert. denied, 528 U.S. 1082 (2000).  When evaluating the sufficiency
of corroboration evidence under the accomplice-witness rule, we “eliminate the
accomplice testimony from consideration and then examine the remaining portions
of the record to see if there is any evidence that tends to connect the accused
with the commission of the crime.”  Clark v. State, 324 S.W.3d 620, 629
(Tex. App.—Fort Worth 2010, pet. ref’d) (quoting Solomon v. State, 49
S.W.3d 356, 361 (Tex. Crim. App. 2001)).  The corroborating evidence need not
prove the defendant’s guilt beyond a reasonable doubt by itself.  Id. 
Nor is it necessary for the corroborating evidence to directly link the accused
to the commission of the offense.  Id.  Rather, the evidence must simply
link the accused in some way to the commission of the crime and show that
rational jurors could conclude that this evidence sufficiently tended to
connect the accused to the offense.  Simmons, 282 S.W.3d at 508; see
Malone v. State, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008) (stating that
while mere presence at the scene of a crime is insufficient to corroborate
accomplice testimony, “[p]roof that the accused was at or near the scene of the
crime at or about the time of its commission, when coupled with other
suspicious circumstances, may tend to connect the accused to the crime so as to
furnish sufficient corroboration to support a conviction”).  We review the
evidence in the light most favorable to the jury’s verdict.  Brown v. State,
270 S.W.3d 564, 567 (Tex. Crim. App. 2008), cert. denied, 129 S. Ct.
2075 (2009).

          Hicks
testified that on October 14, 2007, he and Franklin hung out at Hicks’s
apartment for a while before leaving in Franklin’s blue Cadillac.  They came
across a white Suburban that looked like it was being driven by a drunk driver
and decided to follow it and rob its passengers.  According to Hicks, Franklin
told him, “Those are the kind of people I rob.”  Hicks testified that once the Suburban
parked at an apartment complex, he and Franklin “[g]ot [their] guns ready”
before exiting the Cadillac; Franklin had a .357 revolver that he kept in a
white work glove in the pocket behind the passenger’s seat and Hicks had a
two-shot Derringer.  Hicks approached the passenger side of the Suburban and
Franklin approached the driver’s side, and Hicks noticed that both Mendoza and
Zavala were asleep.[5]  Hicks testified that he reached
into Zavala’s pocket through the open window and that he heard a gunshot after Franklin
opened the driver’s side door and struck Mendoza with the gun.  Franklin then
came around to the passenger side of the vehicle, struck Zavala with the gun,
and went through his pockets.  As Hicks returned to the Cadillac, he saw
Franklin move back around to the other side of the Suburban, stand over
Mendoza, and shoot him in the head.  Later that night, Hicks told Princess
Harris, the mother of his two children, some of the details about the incident.

          Eliminating
Hicks’s accomplice testimony from consideration, the record contains ample
evidence to meet article 38.14’s corroboration requirement.  Specifically, Officer
Matt Johnson testified that he interviewed Maria Monegecarmona on October 14,
2007.  Monegecarmona, a resident of the apartment complex where the murder
occurred, told Johnson that she had observed a disturbance involving two black
males who were driving a black Cadillac or Impala sedan.[6] 
Authorities later located and seized a blue Cadillac sedan that was parked in
the parking lot of the business where Franklin worked.  Inside of the vehicle,
investigators discovered a driver’s license and a Social Security card belonging
to Franklin, a .357 revolver inside of a white glove in the pocket behind the passenger’s
seat, and a partial cigar attached to a plastic tip in the ashtray.

          Jamie
Becker, a firearm and tool mark examiner for the Tarrant County Medical
Examiner’s office, testified that she examined the .357 found in Franklin’s
Cadillac and the bullets recovered during Mendoza’s autopsy.  Based on her test
results, Becker opined that the .357 fired the bullets that were retrieved from
Mendoza’s body.

          Investigators
discovered a white work or garden glove lying on the ground near the Suburban.  Carolyn
Van Winkle, an employee of the DNA Section of the crime laboratory of the
Tarrant County Medical Examiner’s Office, testified that she compared a DNA
sample belonging to Franklin with a DNA sample that had been collected from the
white glove that was found on the ground near the crime scene and that the
probability that the DNA from the glove belonged to someone other than Franklin
was one in eleven quadrillion (11,000,000,000,000,000).[7]
 Moreover, the glove looked similar to the glove that concealed the .357 inside
of Franklin’s Cadillac.

          Investigators
also discovered a small cigar attached to a plastic tip on the ground near the
crime scene.  Visually, the cigar appears to be similar to the partial cigar
discovered in Franklin’s Cadillac.

          Harris
testified that Franklin came over to the apartment that she shared with Hicks
on October 14, 2007; that Franklin and Hicks later left the apartment in
Franklin’s blue Cadillac; and that Hicks was crying, shaking, and nervous after
he returned a few hours later.  She also testified that Franklin kept two guns
in his car (a revolver and an automatic) and that Hicks had told her that he
and Franklin had robbed two Hispanic men and that Franklin had shot one of them
in the head.  Marc Krouse, the chief deputy medical examiner for Tarrant
County, testified that the secondary cause of Mendoza’s death was a gunshot
wound to the face.

          Viewing
the evidence in the light most favorable to the verdict, we hold that a
rational factfinder could have concluded that the evidence detailed above
sufficiently tended to connect Franklin to Mendoza’s murder.  See Tex.
Code Crim. Proc. Ann. art. 38.14; Simmons, 282 S.W.3d at 508–09; Cathey,
992 S.W.2d at 462–63.  Accordingly, Hicks’s accomplice testimony was
sufficiently corroborated under the requirement of article 38.14.  We overrule
Franklin’s only point and affirm the trial court’s judgment.

 

 

BILL MEIER
JUSTICE

 

PANEL: 
DAUPHINOT,
GARDNER, and MEIER, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  April 21, 2011









[1]See Tex. R. App. P. 47.4.





[2]The State did not seek the
death penalty.





[3]Under the plea agreement,
the State agreed to recommend a term of imprisonment for Hicks of thirty-five
years.





[4]There is no dispute that
Hicks was an accomplice.  See Medina v. State, 7 S.W.3d 633, 641
(Tex. Crim. App. 1999), cert. denied, 529 U.S. 1102 (2000) (defining
accomplice as a person who participates before, during, or after the commission
of the crime and can be prosecuted for the same offense as the defendant or for
a lesser-included offense).





[5]Mendoza and Zavala may
have been passed out—Zavala told a police officer that he and Mendoza had been
at a bar earlier in the night.  Officer Matt Johnson testified that Zavala’s
breath smelled of alcohol, and Dr. Marc Krouse testified that Mendoza’s blood
alcohol figure was .324, approximately four times the legal limit for
driving.





[6]Monegecarmona observed the
vehicle at nighttime.





[7]Van Winkle testified that
there are only between six and seven billion people on earth, a significantly
smaller figure than eleven quadrillion.