

# NUMBER 13-10-00098-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**HUMBERTO GARCIA,**                                                               **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                            **Appellee.**

## On appeal from the 148th District Court
## of Nueces County, Texas.

## MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Rodriguez and Benavides
### Memorandum Opinion by Chief Justice Valdez

Appellant, Humberto Garcia, was convicted of murder, aggravated assault, and two counts of engaging in organized criminal activity. *See* TEX. PENAL CODE ANN. §§ 19.02(b)(2), 22.02 (Vernon 2003), § 71.02 (Vernon Supp. 2010). Garcia received a life sentence for the murder, ninety-nine years' confinement for the two counts of engaging

in organized criminal activity, and twenty years' confinement for the aggravated assault. By five issues, Garcia contends that: (1) his conviction was supported by uncorroborated accomplice witness testimony, and, therefore, the evidence was insufficient; (2) there was error in the trial court's jury charge; and (3) the State relied on perjured testimony. We affirm.

## I. THE EVIDENCE

Several of the State's witnesses, including Priscilla Moreno, Clay Bonilla, Oswaldo Ahumada, Gilbert Salas, and Gabriel Salas, testified that on July 25, 2008, they saw multiple men shot with various types of weapons at a home on Segrest Street in Corpus Christi, Texas.[1] However, none of these witnesses were able to identify any of the gunmen.

Cristina Cyre testified that, she was at her home on Segrest with her three children when she heard "banging on the [front] door" and multiple gun shots. Cyre "grabbed the babies" and told her other son, Tristan, to run to the back of the house. Cyre did not see who was shooting at the house.

Danny Villarreal, with whom Cyre and her three children were living, was asleep in the bedroom when the shooting began.[2] When Cyre "rolled [Villarreal] over," she discovered that he had been shot and was dead. Two of Cyre's children were also shot; however, both recovered from their injuries. According to Cyre, Tristan had tenty-six shotgun pellets "throughout his body" and three pellets "in his skull." Cyre's other child, Dylan, had two shotgun pellets on the back of his leg.

---

[1] Officer Bruce Ward testified that the shooting was first reported at 1:21 p.m.

[2] Conrado Castillo, a witness for the State, later testified that the group wanted to kill Villarreal's brother, Raul Valencia, also known as "Tick."

2

Six-year-old Tristan testified that while he was sitting on the living room floor with his brothers, "these guys started shooting." Cyre, Tristan and his brothers went to another room; they got on the ground; and Cyre called 911. Tristan was transported to the hospital by ambulance because he had been shot.

Eduardo Morales, also known as "Recio," testified that he has been a member of the "Mexican Mafia" for twenty-seven years. Morales explained that the Mexican Mafia is an organization that engages in criminal activities. Morales had previously been to prison for burglary and possession of a controlled substance.

Morales stated that, on the day of the shooting, Garcia and another member of the Mexican Mafia, Anthony Gonzalez, picked him up. According to Morales, the three men then went to Jesse Garcia's house, and Jesse told Morales that Raul Valencia had "disrespected" the Mexican Mafia. On cross-examination, Morales clarified that Valencia was a member of the Mexican Mafia and that he had shot at other members of the group. Morales stated that the men then "briefed" him about the plans for the crime, and Garcia instructed Morales to "take the blame" if they were caught.

Morales claimed that the men picked up weapons, arrived at the Segrest house, and then approximately eleven or twelve men lined up in front of the house.[3] Morales stated that Garcia "put his hand up and when he put it down," all of the men, including Morales and Garcia, began firing their weapons. Morales testified that Garcia shot at the house with an "SKS," a "[h]igh-powered weapon." Morales stated that when the men stopped shooting, he was "hit" by a bullet. Morales believed that he was intentionally shot because he had been accused of "snitching." Morales explained that

---

[3] On cross-examination, Morales explained that the group had found Valencia's black BMW parked in front of the house on Segrest.

3

another member of the group, Eriberto Mendez, took him to the hospital in a green truck.

Morales admitted on direct examination that he had mistakenly informed the police that Jimmy Salinas, Alberto Casas, and Conrado Castillo were present at the scene of the shooting. On cross-examination, Morales emphasized, however, that he was wrong about Castillo being present when the shooting occurred.

Tim Revis, a police officer with the Corpus Christi Police Department, testified that, Morales identified several individuals involved in the shooting including Eriberto Mendez, Joe Angel Madero, Jose Gerardo Olvera, Anthony Aleman Gonzalez, Jesus Garcia, Jr., Rudy Daniel Castro, and Garcia. Subsequently, charges were brought against those individuals. Officer Revis also stated that he showed a photo lineup to Morales and Castillo that included a picture of Garcia. They identified Garcia and charges were then filed against him. When asked on cross-examination, if he relied on the information provided by Castillo when he decided to "charge anybody" with the shooting at Segrest, Officer Revis replied, "Yes." Officer Revis then clarified that he relied on a combination of what Castillo and Morales told him.

On cross-examination, Officer Revis stated that, to the best of his knowledge, Castillo was not present when the shooting took place. Officer Revis testified that Castillo told him he was not present at the shooting and that the information Castillo gave him was not "firsthand" because "he was not at the scene."[4] Officer Revis stated, "[S]ome of the information [Castillo] had was provided to him by Maldonado and I

_____

[4] Officer Revis stated that he interviewed Castillo on several occasions and that only one of the interviews was videotaped.

4

believe others. . . . [Castillo] had knowledge of the people that personally told him they were there and involved."

Officer Revis acknowledged that Morales initially stated that Castillo was present. Officer Revis testified however, that when he showed Morales a photo lineup including a picture of Castillo, Morales did not identify Castillo as being present at the shooting. Officer Revis explained that he then showed Morales a single photograph of Castillo and Morales "indicated that was not the person that he was referring to that he had the wrong name." Officer Revis testified that Morales identified Garcia as a person who was present at the scene of the shooting.

Castillo testified that he is a member of the Mexican Mafia and that he has been convicted of several crimes including "unauthorized use of a motor vehicle, failure to appear, and aggravated assault." Castillo had recently pleaded guilty in federal court for a crime involving crack cocaine.[5] Castillo stated that he was not present at the July 25, 2008 shooting that occurred on Segrest. According to Castillo, he was not asked to participate in the shooting because "the majority of the people that were there were prospects, new to the organization," the shooting was in Nueces County, and Castillo was an asset because he sold drugs and made money for the Mexican Mafia.

Castillo claimed that, on the day of the shooting, a meeting was held at his house in Taft, Texas, at approximately 3:00 p.m. to discuss a possible violation of the Mexican Mafia's "rules and regulations" at the shooting on Segrest.[6] Castillo recalled that Reynaldo Castillo, Jesse Garcia, Anthony Gonzalez, Paul Michael, Jesse Dominguez,

---

[5] When asked for what offense he had entered a guilty plea, Castillo replied, "Control substance of crack cocaine," and he did not elaborate.

[6] Castillo explained that, according to the Mexican Mafia's rules and regulations, it is a "no-no" to injure innocent people and that the penalty for violating the rule is death.

5

Gilbert Castro, Randy Aranda, and Garcia were in attendance. Castillo testified that at the meeting, Garcia, also known as "Bird," was "kind of actually bragging about [his involvement in the shooting on Segrest] with a smirk on his face all the time . . . ." Castillo claimed that Garcia, "with a smirk on his face" said, "Yeah. I—we shot down that house. I unloaded the whole clip." Castillo testified that Garcia told him he used an AK-47 and an SKS to shoot at the house. Castillo stated that Jesse told him the reason for the shooting "was because Danny's brother, also known as Tick [(Valencia)] . . . had a shootout with him a day or a few days before that. Eventually, Tick was going around other Mexican Mafia members' house[s] and shooting at their houses. So, that's the main reason that he ordered [the shooting]."

Castillo's wife, Vanessa Castillo, testified that on July 25, 2008, Castillo was with her "during the day." Vanessa said that she and Castillo went to Wal-Mart to "get some stuff for [her] girls and some stuff to make a barbecue." According to Vanessa, "later that day," Garcia, along with several other men, went to her house. Vanessa was not present when the men held their meeting.

## II.    ACCOMPLICE WITNESS

By his first issue, Garcia contends that the evidence was insufficient because the "only evidence tending to connect [him] with the offenses was testimony from two accomplice witnesses." Specifically, Garcia argues that Morales and Castillo were both accomplices as a matter of law; therefore, the State failed to provide any evidence tending to connect Garcia to the shooting on Segrest. Garcia does not attack the sufficiency of the evidence on any other grounds.

## A.    Applicable Law

6

Pursuant to the code of criminal procedure, "[a] conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed . . . ." TEX. CODE CRIM. PROC. ANN. art. 38.14 (Vernon 2005). An accomplice is a person who, acting with the required culpable mental state, participates with the defendant before, during, or after the commission of a crime. *Paredes v. State*, 129 S.W.3d 530, 536 (Tex. Crim. App. 2004). "The participation must involve an affirmative act that promoted the commission of the offense with which the accused is charged." *Id.* A person who merely knew of the offense and did not disclose it, or even concealed it is not an accomplice witness. *Smith v. State*, No. PD-0298-09, 2011 Tex. Crim. App. LEXIS 156, at *34 (Tex. Crim. App. Feb. 2, 2011); *Druery v. State*, 225 S.W.3d 491, 498 (Tex. Crim. App. 2007).

"A State's witness may be an accomplice as a matter of law or as a matter of fact." *Smith*, 2011 Tex. Crim. App. LEXIS 156, at *34; *Cocke v. State*, 201 S.W.3d 744, 747 (Tex. Crim. App. 2006). A witness is an accomplice as a matter of law if there is *no doubt* that the witness acted with the required culpable mental state and participated with the defendant before, during, or after the commission of a crime. *See Smith*, 2011 Tex. Crim. App. LEXIS 156, at *38 (stating that "to be entitled to an accomplice as a matter of law instruction, the evidence must leave no doubt that a witness is indeed an accomplice as a matter of law"); *see Druery*, 225 S.W.3d at 498. A witness is an accomplice as a matter of law if "the witness is charged with the same offense as the defendant or a lesser-included offense or when the evidence *clearly* shows that the witness could have been so charged." *Druery*, 225 S.W.3d at 498 (emphasis added).

7

Unless there is no doubt that the witness is an accomplice, the trial court has no duty to instruct the jury that the witness is an accomplice as a matter of law. *See id.* When there is conflicting evidence or the evidence is unclear regarding the witness's status as an accomplice, the matter is a question of fact left up to the jury to decide. *Smith*, 2011 Tex. Crim. App. LEXIS 156, at *35 ("When there is doubt as to whether a witness is an accomplice (i.e., the evidence is conflicting), then the trial judge may instruct the jury to determine a witness's status as a fact issue."); *Druery*, 225 S.W.3d at 498-99. "However, as with an accomplice as a matter of law, there must still be some evidence of an affirmative act on the part of the witness to assist in the commission of the charged offense before such an instruction is required." *Druery*, 225 S.W.3d at 499.

## B. Accomplice as a Matter of Law

In this case, it is undisputed that Morales was an accomplice as a matter of law.[7] Therefore, Morales's testimony must have been corroborated by other evidence tending to connect Garcia with the offense committed. *See* TEX. CODE CRIM. PROC. ANN. art. 38.14. Garcia contends that the evidence was insufficient to corroborate Morales's testimony because Castillo was also an accomplice as a matter of law and there was no other evidence tending to connect him to the offenses committed. *See id.* The State counters that Castillo was not an accomplice as a matter of law.

At trial, Castillo stated that he was a member of the Mexican Mafia and that after the shooting on Segrest, the group held a meeting at his home to discuss the shooting. Morales admitted that he initially told the police that Castillo was present at the shooting on Segrest. However, Morales also stated that he was mistaken and that Castillo was

---

[7] The trial court provided an instruction to the jury that Morales's testimony needed corroboration.

not present at the shooting. Castillo testified that he was not present when the shooting was committed. Further, Vanessa testified that Castillo was with her running errands and at home on the day of the shooting.

Garcia argues that Castillo was an accomplice as a matter of law because "the Mexican Mafia regularly engaged in drug sales, murder and aggravated assault, the crimes alleged in the indictment were within the criminal contemplation of the conspirators and Castillo is criminally responsible for them." Garcia cites no authority, and we find none, supporting a conclusion that membership and participation in a gang's activities makes a witness an accomplice to all of the crimes committed by the gang, even if the witness did not direct, or participate in the act. In fact, membership in a gang, without evidence that the person participated or assisted in the commission of the crime, is not sufficient to support a finding of accomplice status. *See Medina v. State*, 7 S.W.3d 633, 641-42 (Tex. Crim. App. 1999) (finding "the following combined evidence was sufficient to permit a rational jury to infer that [the witness] was a party to the crime, and hence, raise[d] a fact issue as to [the witness's] accomplice status: (1) [the witness's] presence in the car with appellant when the crime occurred, (2) evidence that the crime was a gang-motivated crime, (3) [the witness's] membership in the same gang as appellant, and (4) [the witness's] efforts to cover up the crime"). Furthermore, "complicity with an accused in the commission of another offense apart from the charged offense does not make that witness's testimony that of an accomplice witness." *See Druery*, 225 S.W.3d at 498. Therefore, we cannot conclude that gang membership alone or participating in other gang-related criminal acts having nothing to do with the

9

charged offense makes the witness an accomplice as a matter of law to the charged offense.

It is undisputed that Castillo was not charged with the same offense as Garcia or a lesser-included offense. *See Druery*, 225 S.W.3d at 498. Moreover, the evidence does not *clearly* show that Castillo could have been charged with the offense committed. *See id.* Therefore, we conclude that Castillo was not an accomplice as a matter of law.[8] *See id.* We overrule Garcia's first issue.

By his second issue, Garcia contends that the trial court erroneously failed to instruct the jury that Castillo was an accomplice as a matter of law. Having already determined that Castillo was not an accomplice as a matter of law, we also conclude that the trial court was not required to provide an accomplice as a matter of law instruction. *See* TEX. CODE CRIM. PROC. ANN. art. 36.14 (Vernon 2007) (providing that the trial court shall deliver to the jury "a written charge distinctly setting forth the law applicable to the case"); *Druery*, 225 S.W.3d at 497 (setting out that if the witnesses were not accomplices as a matter of law or fact, there was no error in the trial court's jury charge lacking such an instruction). We overrule Garcia's second issue.

## C. Accomplice as a Matter of Fact

By his third and fourth issues, Garcia contends that the trial court's jury instruction regarding Castillo's status as an accomplice witness as a matter of fact was erroneous. Specifically, he argues that the trial court's definition of an accomplice was

---

[8] Garcia, citing a transcript of a police interview with Castillo, also argues that the State "was specifically aware of Castillo's complicity as an accomplice." Garcia's trial was held on October 20-21, 2009. The transcript was filed with the trial court on November 18, 2009. This transcript was not admitted at trial, and it was provided to the trial court after Garcia's trial. Therefore, we may not consider it as evidence proving that Garcia was an accomplice as a matter of law or a matter of fact. *See Ramirez v. State*, 104 S.W.3d 549, 551 n.9 (Tex. Crim. App. 2003) (providing that the appellate record cannot be supplemented with evidence not introduced during trial).

10

erroneous because it did not state that the jury could consider Castillo's actions after the commission of the offense and that the trial court restricted the jury's application of the accomplice witness rule to only count one in the indictment.

In *Druery*, the court of criminal appeals refused to consider appellant's issues contending "that the trial judge's instruction to the jury regarding whether [the witnesses] were accomplice witnesses as a factual matter was constitutionally inadequate" because it concluded that the witnesses were not accomplices as a matter of fact. 225 S.W.3d at 497-500. The court stated, "if [the witnesses] are not accomplices, then the trial judge's instruction regarding accomplice witnesses as a matter of fact was superfluous and did not harm [appellant]." *Id.* at 497. The court explained that appellant's claims rested "upon the threshold issue of whether [the witnesses] were accomplices—either as a matter of law or of fact—to the capital murder or a lesser-included offense of the capital murder." *Id.* The court then held that appellant's "arguments concerning accomplice witness instructions given to or not given to the jury and concerning the application of the accomplice witness rule to the underlying predicate felony offense [were] inapposite." *Id.* at 500. Therefore, having already concluded that Castillo was not an accomplice as a matter of law, we will now determine whether Castillo was an accomplice as a matter of fact to the offenses Garcia was charged with committing. *See id.* at 497. If Castillo was not an accomplice as a matter of fact, then the trial court's instruction asking the jury to determine whether Castillo was an accomplice witness as a matter of fact was and did not harm Garcia. *See id.* at 497, 500.

11

Here, Morales admitted that he initially told the police that Castillo was present at the shooting; however, Morales told Officer Revis that he had given police the wrong name. In addition, Morales testified that he was mistaken when he said Castillo was present. Regardless, the mere presence of the witness at the scene of the crime does not render the person an accomplice witness. *Druery*, 225 S.W.3d at 498; *McCallum v. State*, 311 S.W.3d 9, 14 (Tex. App.–San Antonio 2010, no pet.) (finding that there was no evidence that the witness "participated" in the crimes committed by appellant and concluding that the witness was not an accomplice as a matter of fact even though the witness was present during the attack, concealed his knowledge of the crime from police, and disposed of evidence).

Moreover, Morales did not state that Castillo participated in the shooting or promoted, encouraged, solicited, or aided in its commission. *See* TEX. PENAL CODE ANN. § 7.02(a)(2) (Vernon 2003) (providing that under the law of parties, a person is a party to an offense if "acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense"); *Paredes*, 129 S.W.3d at 536; *Blake v. State*, 971 S.W.2d 451, 455 (Tex. Crim. App. 1998) (en banc) ("A person is an accomplice if there is sufficient evidence connecting him to the criminal offense as a blameworthy participant."). On appeal, Garcia claims that Castillo "admitted" his "direct participation in the crimes by providing transportation to a fleeing Joe Maldonado"; however, at trial, no evidence was presented that Castillo provided transportation to a fleeing Maldonado. In fact, Castillo stated that he did not give Maldonado a ride on the day of the shooting. Therefore, Garcia's argument is without merit.

12

Castillo admitted that a meeting was held at his house after the shooting to discuss whether the shooters violated the rules of the Mexican Mafia. However, this evidence is not sufficient to prove that Castillo was an accomplice witness—it does not prove that Castillo affirmatively assisted in the shooting on Segrest. *See Druery*, 225 S.W.3d at 500 (providing that even assisting after a murder in the disposal of a body does not transform a witness into an accomplice witness in a prosecution for murder without evidence that the witness affirmatively assisted in committing the offense). Furthermore, the fact that Castillo admitted to engaging in other criminal activities on behalf of the Mexican Mafia does not make him an accomplice as a matter of fact. *See Druery*, 225 S.W.3d at 498; *Medina*, 7 S.W.3d at 641-42.

The evidence is not conflicting or unclear regarding Castillo's status as an accomplice because there was no evidence showing that Castillo committed an affirmative act in order to assist or promote the shooting on Segrest. *See Druery*, 225 S.W.3d at 499-500 (concluding that the witnesses were not accomplices as a matter of fact even though appellant told the witnesses he was going to kill the victim, neither witness warned the victim that appellant stated he was going to kill him, the witnesses were present prior to and during the murder, appellant gave each witness forty dollars that he took from the victim after he committed the murder, one of the witnesses helped dispose of the body, and the other witness assisted in disposing of the murder weapon); *Kunkle v. State*, 771 S.W.2d 435, 437-438, 441 (Tex. Crim. App. 1986) (en banc) (finding the evidence failed to even raise a factual issue regarding whether the witness was an accomplice even though the witness was present before, during, and after commission of the murder and knew that: (1) one of the accomplices had a gun and

13

had fired it into the air; (2) the codefendants planned to commit robbery; (3) two of the accomplices used a gun to steal seven dollars from another person immediately before robbing and killing the victim; and (4) the group intended to steal from the murder victim). Therefore, the trial court's instruction allowing the jury to determine whether Castillo was an accomplice witness as a matter of fact and did not harm Garcia. *See Druery*, 225 S.W.3d at 497 (refusing to consider appellant's complaints regarding the accomplice witness jury charge instruction because the witnesses were not accomplices as a matter of fact); *see also Cocke*, 201 S.W.3d at 748 ("The trial court is not required to give the jury an accomplice-witness instruction when the evidence is clear that the witness is neither an accomplice as a matter of law nor as a matter of fact."). In fact, such an instruction benefitted Garcia because it required corroboration of Castillo's testimony if the jury had found that Castillo was an accomplice to the shooting.[9] *See Druery*, 225 S.W.3d at 497-98 (explaining that appellant was benefitted by a superfluous accomplice witness instruction, and, therefore, he could not have been harmed by it). Accordingly, we overrule Garcia's third and fourth issues.

### III. PERJURY

By his fifth issue, Garcia contends that the State relied on perjured testimony in violation of his due process rights; therefore, the trial court erroneously denied his motion for new trial. The State responds that Garcia failed to introduce evidence that Castillo committed perjury at the motion for new trial hearing.

### A. Standard of Review and Applicable Law

---

[9] Garcia does not challenge the jury's implied finding that Castillo was not an accomplice as a matter of fact.

14

We review a trial court's denial of a motion for new trial for an abuse of discretion. *Charles v. State*, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004). "We do not substitute our judgment for that of the trial court, but rather we decide whether the trial court's decision was arbitrary or unreasonable." *Id.* We view the evidence presented at a motion for new trial hearing in the light most favorable to the trial court's ruling, and we presume all reasonable factual findings that could have been made in support of the trial court's ruling. *Id.* "[A] trial court abuses its discretion in denying a motion for new trial only when no reasonable view of the record could support the trial court's ruling." *Id.*

"[T]he State violates a defendant's right to due process when it actively or passively uses perjured testimony to obtain a conviction." *Ex parte Castellano*, 863 S.W.2d 476, 481 (Tex. Crim. App. 1993) (en banc). If the State has actual or imputed knowledge of the perjury, a violation occurs. *Id.* The burden to show that the testimony used by the State was, in fact, perjured is on appellant. *Losada v. State*, 721 S.W.2d 305, 311 (Tex. Crim. App. 1986) (en banc) (citing *Luck v. State*, 588 S.W.2d 371, 373 (Tex. Crim. App. 1979)). A person commits perjury if he acts with an intent to deceive and with knowledge of the statement's meaning and makes a false statement under oath. TEX. PENAL CODE ANN. § 37.02(a)(1) (Vernon 2003).

**B.    Discussion**

Garcia argues that at the hearing on his motion for new trial, he offered a transcript of Castillo's videotaped interview with police proving that Castillo committed perjury.[10] The State asserts that we should not consider the interview because it was

---

[10] At the hearing on his motion for new trial, Garcia did not present any evidence to be admitted by the trial court. However, during argument, Garcia's attorney asked the trial court to review the

15

not admitted into evidence during the hearing on the motion for new trial. We agree with the State.[11] However, even if we could review the interview, Garcia has still failed to prove that Castillo committed perjury.

Garcia generally argues that "Castillo's trial testimony is diametrically opposed to his denial in his videotaped interview that the Segrest shooting was discussed, and is perjurous." Garcia cites a portion of the interview wherein an unknown speaker asked Castillo if a Mexican Mafia meeting was held the day after the Segrest shooting. Castillo responded that a meeting was held the next day to discuss "finish[ing] off Tick." The unknown speaker then asked Castillo if the group discussed the Segrest shooting at that meeting; Castillo replied, "Not really."

Garcia claims that this evidence proves that Castillo committed perjury because, at trial, Castillo testified that the group discussed the Segrest shooting at a meeting where Garcia admitted his involvement. Therefore, Garcia argues, by stating that the group did "not really" discuss the Segrest shooting, Castillo, in effect, denied that any discussions about the Segrest shooting occurred. Upon our review of the record, it is obvious that during the videotaped interview, Castillo was describing a meeting held the day after the shooting, and he was not referring to the meeting that he testified at trial was held on the day of the shooting at his home.[12] Thus, the trial court could have

transcript of a videotaped interview with Castillo that was filed the same day as Garcia's motion for new trial.

[11] At the hearing, although Garcia told the trial court that he had filed the transcript, there is nothing in the record showing that the trial court actually reviewed the transcript before making its ruling. *See Wright v. State*, 178 S.W.3d 905, 916-17 (Tex. App.–Houston [14th Dist.] 2005, pet. ref'd) (explaining that the appellate court could not consider a DVD attached to motion for new trial because it was not introduced at the new trial hearing); *Ramirez*, 104 S.W.3d at 551 n.9 (providing that the appellate record cannot be supplemented with evidence not introduced during trial).

[12] Garcia appears to suggest that during his videotaped interview, Castillo was talking about the meeting held at his home on the day of the shooting. We disagree with this interpretation.

16

believed that there were two meetings—one held the day of the shooting to discuss possible violations of the rules and regulations and another one held the day after the shooting to plan "finish[ing] off Tick."[13]  *See Charles*, 146 S.W.3d at 206 ("[A]n appellate court, in its review of a trial court's ruling on a motion for new trial:  1) should apply a deferential standard of review to the trial court's resolution of historical facts; and 2) may rely upon implied findings of fact that are supported by the record to uphold the trial court's ruling, even when the trial court is not faced with expressly conflicting affidavits or testimony.").  Therefore, viewing the evidence in the light most favorable to the trial court's ruling, we conclude that this evidence does not establish that Castillo committed perjury at trial.  *See id.*  The trial court did not abuse its discretion in denying Garcia's motion for new trial.  *See id.*  We overrule Garcia's fifth issue.

## IV.  CONCLUSION

We affirm the trial court's judgment.

_____
ROGELIO VALDEZ
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2(b)
Delivered and filed the
10th day of March, 2011.

---

[13] Moreover, the trial court could have found that Castillo's statement that the group did "not really" discuss the shooting is not inconsistent with stating that there was a limited amount of discussion concerning the Segrest shooting.

17